[No. E015439. Fourth Dist., Div. Two. Aug. 24 1995.]

CITY OF HEMET, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
PRESS-ENTERPRISE COMPANY, Real Party in Interest.

1412

1414

## COUNSEL

Robert T. Henderson, City Attorney, Ferguson, Praet & Sherman, Larry J. Roberts and Peter J. Ferguson for Petitioner.

No appearance for Respondent.

Waters & Elwell and Sharon J. Waters for Real Party in Interest.

Crosby, Heafey, Roach & May and John E. Carne as Amici Curiae on behalf of Real Party in Interest.

## OPINION

McKINSTER, J.—In this matter we issued an alternative writ of mandate to consider whether real party, the Press-Enterprise newspaper, is entitled to obtain certain records from petitioner, the City of Hemet (City), under the California Public Records Act (CPRA). (Gov. Code, § 6250 et seq.)[1] The trial court ordered disclosure of certain records; however, we conclude that real party is not entitled to the records under the CPRA, and will issue the writ as prayed.

### STATEMENT OF THE CASE

Chuck Steadman, a police sergeant for the City, became concerned over drug use at the high school attended by his children. He collected certain information, and eventually faxed to school officials a list of students he believed to be involved in the use and/or sale of drugs. The faxed memorandum also reported that a deputy sheriff was aware of the drug use but did not prevent or disclose it because one of the students had a photograph of the deputy smoking marijuana and threatened to publicize it.

This action by Sergeant Steadman became the subject of some public interest when the memorandum, which had been intended for the sole use of a vice-principal, was circulated or shown to other persons. The City eventually conducted an investigation of the incident, focussing on whether Steadman had improperly used City property (the fax machine), had investigated drug use on *county* property (the school grounds) while on duty as a City officer, or had used his police status to obtain confidential information from the school.

The deputy sheriff mentioned by name in the fax filed a claim under the Tort Claims Act (§ 810 et seq.) on May 12. Litigation on the claim is apparently still pending.

---

[1]Most undifferentiated statutory references in the body of the text are to the Government Code; references to the Penal Code or Evidence Code will generally be specified unless the context makes such specification unnecessary.

On April 27, 1994—after the investigation was completed[2] —The Press-Enterprise filed with the City a request for documents under CPRA. The Press-Enterprise sought "the report on the internal investigation conducted by the Hemet Police Department into the actions of Sgt. Chuck Steadman. . . ." By letter dated May 13, the City regretfully declined to provide the records, and the newspaper filed a petition for writ of mandate in the superior court pursuant to section 6258.[3] The superior court found the records to be discoverable, subject only to redaction in the interests of the privacy of some of those concerned.[4] The City exercised its right to review by this court, and we stayed disclosure pending resolution of the matter. (§ 6259, subd. (c).)

## DISCUSSION

## I.

■ In undertaking review of such an order, we perform plenary review of the ruling on the merits; our review is independent on issues of law, and follows the substantial evidence test with respect to any issues of fact. (*Times Mirror Co.* v. *Superior Court* (1991) 53 Cal.3d 1325, 1336 [283 Cal.Rptr. 893, 813 P.2d 240].)

Section 6255 provides that when a public agency[5] decides to refuse a request under CPRA, it "shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record." Here, the City contends both that disclosure is prohibited by one or more specific provisions of CPRA, *and* that this is a

---

[2] A memorandum in the investigatory file clearly reflects that the investigation had been completed by April 4, 1994. This file was submitted to this court under seal and remains sealed.

[3] "Any person may institute proceedings for injunctive or declaratory relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under this chapter. . . ."

[4] It does not appear from the record that the court ever issued an actual writ of mandate; the details concerning production and redaction were contained in a "Supplemental Order to Order Granting Writ," but the record does not contain any actual writ or judgment.

Section 6259, subdivision (c) provides that an "order" obtained under section 6258 is *not* an appealable judgment, but may be reviewed by extraordinary writ. Thus, the apparent absence of an actual "judgment" is not jurisdictionally fatal to this proceeding.

[5] Section 6252, subdivisions (a) and (b) use the term "state agency" and "local agency" to describe the scope of CPRA. The terms include state offices, departments, bureaus and boards, etc., and cities, counties, school districts, other political subdivisions, and other boards, districts, commissions, etc. We use "public agency" to cover both state and local agencies.

case in which the public interest in secrecy outweighs that in disclosure. At the bottom of its most pressing argument is the assertion that the confidentiality provisions applicable to police personnel records under Penal Code section 832.5 et seq. bar disclosure under CPRA.

In opposition, the Press-Enterprise contends not only that the litigation privilege is inapplicable, but also that the Penal Code sections apply *only* to attempts to discover materials made within the context of litigation, and are wholly inapplicable to a CPRA request.

In considering the arguments of the parties, we are mindful of the legislative declaration that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) ▉ The adoption of CPRA reflected a " 'background of legislative impatience with secrecy in government' " (*San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762, 771-772 [192 Cal.Rptr. 415], quoting 53 Ops.Cal.Atty.Gen. 136, 143 (1970)) and courts must be careful to respect the purpose of the CPRA. We must give due regard to the primary purpose of CPRA, or what the United States Supreme Court has described as the "core purpose" of the analogous federal act: to " 'contribute significantly to public understanding of the operations or activities of the government' " and to let citizens know " 'what their government is up to.' " (*U.S. Dept. of Justice* v. *Reporters Committee* (1989) 489 U.S. 749, 773, 775 [103 L.Ed.2d 774, 795, 797, 109 S.Ct. 1468].)[6] As our own Supreme Court has stated, "Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process." (*CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470].)[7]

## II.

▉ The City contends that the records are protected by the privilege for documents pertaining to litigation.

---

[6]Our Supreme Court has held that CPRA and the federal Freedom of Information Act (FOIA) "should receive a parallel construction." (*American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d 440, 451 [186 Cal.Rptr. 235, 651 P.2d 822].) Although the court has more recently cautioned that CPRA must not be construed to read into it FOIA language which CPRA itself does not contain (*Williams* v. *Superior Court* (1993) 5 Cal.4th 337, 351-352 [19 Cal.Rptr.2d 882, 852 P.2d 377]), it remains true that the two enactments have similar policy objectives.

[7]It should be noted that members of the media have no greater right of access than that enjoyed by any member of the public. (*Rogers* v. *Superior Court* (1993) 19 Cal.App.4th 469, 476, fn. 4. [23 Cal.Rptr.2d 412].)

Most of the exemptions to the general policy of free disclosure are set out in section 6254. Subdivision (b) allows the public agency to withhold "[r]ecords pertaining to pending litigation to which the public agency is a party, or to claims made pursuant to Division 3.6 (commencing with Section 810)[8] until the pending litigation or claim has been finally adjudicated or otherwise settled." The City contends that the records of the investigation conducted by the police department into the conduct of Sergeant Steadman qualify as such records.

As the dates set out above demonstrate, the internal affairs investigation was concluded over two weeks before the deputy sheriff filed his claim. Press-Enterprise points out this chronology, and argues that the exemption affects only items prepared before a lawsuit or tort claim is filed, and certainly not to records which were not prepared with the primary purpose of assisting in the litigation. Press-Enterprise asserts that the City cannot take records which were not exempted in their genesis and transform them into exempt "litigation" documents simply because they *later* become relevant to a lawsuit.

Press Enterprise's position is supported by an opinion of the Attorney General. (71 Ops.Cal.Atty.Gen. 235 (1988).) Asked to construe the exemption, the Attorney General took the position that "pending litigation" is a term of art (71 Ops.Cal.Atty.Gen. at p. 238); thus, an action or proceeding is " 'pending' from its inception until the rendition of final judgment." (Black's Law Dict. (6th ed. 1990) p. 1134; see 71 Ops.Cal.Atty.Gen. at p. 238.) He further concluded that a document could not "pertain to pending litigation" unless it was prepared specifically for that litigation, rejecting the argument that any record which was "relevant to" the subject matter of litigation thereby was a record which "pertained to" the litigation itself.

Although this conclusion does not follow necessarily from the proposition that litigation cannot be "pending" until it is commenced, the Attorney General's view is supported at least in part by analogous construction of other statutes. ■ With respect to the attorney-client privilege, for example, if a client prepares a report or other document relating to an incident or situation and intends that the document be transmitted to counsel, it is privileged; however, if a report is prepared in the usual course of business for a purpose independent of possible legal consultation, no privilege is created even if the document is later sent to counsel. (*D. I. Chadbourne, Inc.* v. *Superior Court* (1964) 60 Cal.2d 723, 737 [36 Cal.Rptr. 468, 388 P.2d

---

[8]The reference is to the Tort Claims Act.

700].) A document or report prepared for a dual purpose is privileged, or not privileged, depending on the "dominant purpose" behind its preparation. (*Holm* v. *Superior Court* (1954) 42 Cal.2d 500, 507 [267 P.2d 1025]; *Vela* v. *Superior Court* (1989) 208 Cal.App.3d 141, 149 [255 Cal.Rptr. 921].)

 Under the Press-Enterprise's view, the internal affairs report here was prepared with a "dominant purpose" relating to intradepartmental concerns. Certainly this conclusion is amply supported by the record, specifically the declaration of City's Police Chief, Lee Evanson, which describes the report's value and importance as a critical part of the department's "self-critical analysis" which makes the department "able to formulate better training and ultimately provide the careful management of a police department better able to serve the citizens of our community."[9] (Cf. *Vela* v. *Superior Court, supra*, 208 Cal.App.3d 141, 149-151, involving an investigation by a task force "created specifically for the purpose of investigating incidents or occurrences which could lead to the possible institution of a civil action . . . totally separate from the investigations of citizen complaints, personnel complaints, or the criminal investigation for the underlying charges," and holding the report of the task force essentially privileged from discovery.)

It is also important to keep in mind the essential purpose of CPRA, and the necessity for showing "genuine public policy concerns" for nondisclosure. (*Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645, 655 [117 Cal.Rptr. 106].) The Attorney General, in his opinion, noted the undesirability of exempting (that is, hiding) large categories of public documents which happened to become "relevant" to later litigation. Also, as we have explained with reference to *D. I. Chadbourne, Inc.* v. *Superior Court, supra*, 60 Cal.2d 723, in civil litigation between private parties there would be no privilege for a report of the nature of the internal affairs reports at issue here; such a report would be subject to discovery in the interests of justice and a fair trial. Thus, disclosure under CPRA would not, despite the City's claims,

---

[9]Evanson did not attempt to claim that the internal affairs report was prepared with the intention of using it in litigation; he merely goes on at length to explain the importance of a confidential, candid internal investigatory process.

The City included as an exhibit to its petition before this court a declaration by its city attorney in which he states that he "monitored" the internal affairs investigation because he expected litigation to result from the memo incident. (Exhibit L.) This falls short of establishing that the "dominant purpose" of the investigation was to produce a privileged litigation document.

Furthermore, this declaration was not presented to the trial court and was not even executed until *after* the trial court made its ruling. It is not properly part of the record (see Cal. Rules of Court, rule 56(c)(2)), and we grant the Press-Enterprise's motion to strike it.

hamper its ability to defend itself, because disclosure to the opposing party would inevitably be required anyway.[10]

If disclosure under CPRA would not hamper the City's reasonable efforts to defend itself in a lawsuit, there is no public purpose to be served by denying disclosure, and a substantial public purpose to be served by *requiring* disclosure. The public interest in the activities of a public agency is quite likely to be highest when the agency is being sued. That is exactly the time when members of the public become aware of possible misdeeds or undesirable practices on the part of the agency, and have the strongest incentive to examine records which shed light on the operations of their government. This purpose is served by adopting a limited construction of the "pending litigation" exemption in section 6254, subdivision (b): a document is protected from disclosure only if it was specifically prepared for use in litigation. (See *State of California* ex rel. *Division of Industrial Safety* v. *Superior Court* (1974) 43 Cal.App.3d 778, 783 [117 Cal.Rptr. 726].)

Thus, we reject the City's intitial argument in support of nondisclosure.[11]

---

[10]At this point we are not considering the application of other exemptions to the reports, but are assuming that they would be discoverable but for the possible application of the "pending litigation" exemption.

[11]The opposite view, which we here reject, is that section 6254, subdivision (b) *is* designed to cut off access to documents *relevant* to later-instituted litigation. This is the tentatively expressed view of one commentator: "Thus, it would seem that this subsection was primarily designed to prevent a litigant opposing the government from using [CPRA's] disclosure provisions to accomplish earlier or greater access to records pertaining to [i.e., relevant to] pending litigation or tort claims that would otherwise be allowed under the rules of discovery. . . ." (Note, *The California Public Records Act: The Public's Right of Access to Governmental Information* (1976) 7 Pacific L.J. 105, 131 (*Public's Right of Access*).) This comment overlooks the fact that such a construction would not only prevent access by litigants, but also by the public in general. The writer *does* note that, even if this is the correct construction, a party planning to sue or file a claim with a public agency could easily circumvent the hindering intent of the subdivision by filing his CPRA request *before* filing suit or the claim. (*Id.* at pp. 131-132.)

In our view, the statute, so construed, is at best pointless and at worst mischievous. A litigant against a state agency can certainly obtain documents which are merely *relevant to* the subject matter of the litigation through discovery. He or she could also, as *Public's Right of Access, supra,* at page 131 recognizes, obtain the documents by a routine CPRA request *before* litigation is commenced. Thus, the statute's only restrictive effect would be to cause the litigant some extra time and expense in obtaining the documents through a formal litigation discovery request, and then only if he or she had neglected to obtain them through a prelitigation CPRA request. On the other hand, the effect of barring public access to documents precisely when the records would be of most interest and concern to the public is antithetical to the purpose of CPRA.

Finally, we see no significance in the remark in *Public's Right of Access, supra,* at page 131 that *greater* access might be available under CPRA than in litigation discovery. Under Code of Civil Procedure section 2017, subdivision (a), a party may obtain discovery "regarding *any*

## III.

The next argument by the City which we address involves the applicability of section 6255, the "catch-all" exemption. We consider only part of the City's argument, however, and that but briefly. As we will discuss below, the general "public interest" exemption created by section 6255 is mooted if the Legislature has created a specific exemption, and need be addressed only if the City's third argument—that involving the specific applicability of section 6254, subdivision (k)—fails.

As quoted above in part I, the statute permits the public agency to justify withholding a record either by showing that it is subject to a specific exemption, or that nondisclosure is warranted on the basis that "on the facts of the particular case," the balancing of interests *clearly* favors nondisclosure. There must be a "clear overbalance on the side of confidentiality" before the catch-all applies. (*Black Panther Party* v. *Kehoe, supra,* 42 Cal.App.3d at p. 657.)

We find that the catch-all cannot logically be applied to the records in question here. Section 6254 contains no fewer than *24* express exemptions, ranging from certain library records (subd. (j)) to records of Native American gravesites (subd. (r)). Sections 6254.1-6254.12 describe even more specific classes of exempt materials. Although obviously it will not be possible for any legislative body to designate in advance every category of records (even if not yet in existence) which it may wish to exempt from the operation of CPRA, equally obviously our Legislature has made a valiant effort in this respect. (Cf. the federal FOIA, 5 U.S.C. § 552, which contains only *nine* specific categories of exempt materials.) Given the Legislature's concern to provide specific exemptions for a plethora of limited and obscure categories, it is very unlikely that it would have left a conspicuous and frequently controversial category such as "police personnel records and/or records of internal affairs investigations" to be covered only by the vague catch-all of section 6255.

It is also to be noted that the Legislature *did* provide categorical exemptions in section 6254 for two classes of documents related to those in issue

---

*matter,* not privileged, that is *relevant to* the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Italics added.) In other words, a party may obtain through discovery anything which may be useful to him or her at trial. Insofar as CPRA allows access to records which are not relevant to the issues and/or would not lead to admissible evidence (e.g., on completely separate matters), it obviously confers no advantage.

We should also note that although discovery is not available to compel the disclosure of records when a tort claim is filed, litigation is the usual consequence when a claim is denied and there is no legal method by which a public agency may be compelled to settle a claim in advance of a lawsuit.

here: subdivision (c) protects "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy," while subdivision (f) protects most of a law enforcement agency's general investigative files. We cannot accept the proposition that the Legislature, being obviously aware of the sensitivity of both personnel files and law enforcement investigations, would not have created a specific exemption for law enforcement personnel investigations had it wished to do so *and* saw a need to do so.[12]

We therefore cannot agree that the Legislature left these materials to be exempted as a "particular case" to be argued under section 6255.[13]

## IV.

 We now turn to the interrelationship between CPRA and Penal Code sections 832.5-832.8.

Government Code section 6254, subdivision (k) provides one of the more open-ended exemptions in CPRA. Under that provision, disclosure is not required of "Records the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." This provision may protect records which would be held not to be covered by one or more specific exemptions. (*Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 373 [20 Cal.Rptr.2d 330, 853 P.2d 496], holding that records falling within the attorney-client privilege are exempted by subdivision (k), even if they do not relate to "pending litigation" under subdivision (b).)

The City argues that such an exemption, or prohibition, is created by the Penal Code sections cited above. We agree.

---

[12]At this point we ignore the effect of section 6254, subdivision (k), but confine our analysis to those exemptions which describe protected materials without the necessity of reference to other laws. As will become apparent in part IV we think the reason the Legislature did not create a specific exemption for law enforcement personnel or personnel investigatory records in section 6254 is that it had created one by implication.

[13]The "facts of the particular case" language may be interpreted as providing an exemption for an entire class of materials not specifically exempted, if the court finds that the class was apparently never considered by the Legislature (see, e.g., *Times Mirror Co.* v. *Superior Court, supra*, 53 Cal.3d 1325, which held that the Governor's appointment books were exempt, that being a category which the Legislature presumably never thought about); alternatively, it may be read as permitting the public agency to withhold records which, as a class, are clearly *not* exempt, but which, in the particular case, public policy requires nondisclosure. As a third possibility, the statute may contemplate both. We do not resolve the issue, although we note that we have reviewed the records ordered disclosed in this case and are of the opinion that no public concern or policy unique to this case would militate against disclosure.

Penal Code section 832.5 provides that law enforcement agencies within the state must establish procedures for the investigation of citizens' complaints against law enforcement personnel, and requires that the complaints, and the records of any investigations of such complaints, be retained for at least five years.[14] Section 832.7, subdivison (a), states that "Peace officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. . . ." Section 832.8 then defines "personnel records" to include, inter alia, the records of investigations of complaints against a named officer.

By the enactment of sections 1043 through 1045 of the Evidence Code, as well as Penal Code sections 832.7 and 832.8, the Legislature "codified the privileges and procedures surrounding what had come to be known as 'Pitchess motions' (after our decision in *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]). . . ." (*City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 81 [260 Cal.Rptr. 520, 776 P.2d 222].) As the court explained in *City of Santa Cruz*, section 1043 establishes "relatively relaxed standards for a showing of good cause" as the basis for an in camera inspection of "all potentially relevant documents"; however, the in camera requirement "guarantee[s], in turn, a balancing of the officer's privacy interests against the defendant's need for disclosure." (49 Cal.3d at p. 84.) The court also noted that, in applying the Evidence Code sections, courts had generally "refused to disclose verbatim reports or records of any kind from peace officer personnel files, ordering instead . . . that the agency reveal only the name, address, and phone number of any prior complainants and witnesses and the dates of the incidents in question. (See *Kelvin L.* v. *Superior Court* (1976) 62 Cal.App.3d 823, 828-829 . . . ; *Carruthers* v. *Municipal Court* (1980) 110 Cal.App.3d 439, 441 . . . .].)" (*Ibid.*) The cases cited note that "good cause" (Evid. Code, § 1043, subd. (b)(3)) for disclosure of actual records or reports does not exist if the party seeking discovery can obtain the desired information through direct contact with the complainants or witnesses; in context, the Supreme Court's comment clearly approves such an approach.

█ It has repeatedly been held that Evidence Code section 1043 et seq. constitute the *exclusive* means by which a litigant *in a civil action* may obtain discovery of records governed by those statutes. (E.g., *Davis* v. *City of Sacramento* (1994) 24 Cal.App.4th 393, 400 [29 Cal.Rptr.2d 232]; *County of Los Angeles* v. *Superior Court* (1990) 219 Cal.App.3d 1605, 1611 [269

---

[14]It should be noted that a citizen complaint concerning the fax and the accusation of specific students *was* filed with the City Police Department.

Cal.Rptr. 187]; *City of Fresno* v. *Superior Court* (1988) 205 Cal.App.3d 1459, 1477 [253 Cal.Rptr. 296]). The three cases cited discuss the priority of the Evidence Code rules only in the context of any conflict with the general discovery rules (Code Civ. Proc., § 2015 et seq.) and thus are not directly dispositive of the issue before us; however, more specific guidance is available.

In *County of Los Angeles* v. *Superior Court* (1993) 18 Cal.App.4th 588 [22 Cal.Rptr.2d 409], one McMurray had brought a civil action against two deputy sheriffs for assault and battery and civil rights violations. In the civil action, the trial court denied McMurray's "appropriate"[15] motion for discovery (presumably made under Evidence Code section 1043 et seq.) involving the deputies' prior arrests of persons for crimes similar to those with which McMurray was charged. A legal secretary in the office of McMurray's attorney then filed a CPRA request for the information, which was refused; the reported litigation to enforce the purported CPRA rights ensued.

The appellate court based its denial of the writ petition on its construction of Government Code section 6254, subdivision (f)(1) and (2), which (as an exception to a general exemption for law enforcement files) does require the disclosure of specified information about arrests, arrestees, and complaints to which law enforcement personnel respond. Having determined that the subdivision only required the disclosure of information about *contemporaneous* information "in order to prevent secret arrests and to mandate the continued disclosure of customary and basic law enforcement information to the press" (18 Cal.App.4th at p. 598), the court found that the CPRA request at issue in the case improperly sought historical data and was properly refused by the subject agency.

Having so determined, however, the court went on to discuss "the existence of other statutes which regulate the maintenance and disclosure of historical information of the kind sought by [the secretary]." (18 Cal.App.4th at p. 599.) With respect to the legal secretary's request, it commented that "there can be little doubt the ultimate purpose of the request is to discover indirectly information of the kind governed by [Penal Code sections 832.5, 832.7, and 832.8, and section 1043 of the Evidence Code]." (*Ibid.*) The existence of these statutes "reinforced" its conclusion that disclosure could not be ordered. (*Ibid.*)

The court described the Evidence Code sections as creating "detailed and careful procedures to assure that the sensitive information contained in records relating to allegations of police misconduct will be disclosed only

---

[15]At least procedurally.

upon a showing of manifest necessity." It then pointed out the obvious: "Such procedures would be nullified if . . . the same information, or information leading to it, could be obtained as a matter of right through the Public Records Act." (18 Cal.App.4th at p. 600.) The court then said flatly, "Obviously, we cannot construe section 6254, subdivision (f), to require such a result." (*Ibid.*)

These comments in *County of Los Angeles, supra,* 18 Cal.App.4th 588, are directly applicable to the case at bar, and we agree with them.

■■■■ Especially as construed, the statutes contained in the Evidence and Penal Codes relating to police records establish specific criteria for disclosure of information which impose considerably more arduous requirements for the seeker, and are more zealous to protect the subject, than those contained in CPRA. The latter is, after all, founded upon a policy favoring disclosure, while the Evidence Code procedure begins from a presumption of confidentiality.

For example, the Evidence Code procedure contains a requirement that the law enforcement officer be notified of the request. (Evid. Code, § 1043, subd. (a).) This requirement, which has no analog in CPRA, has been held highly significant to the policies behind the Penal and Evidence Code statutes. (*City and County of San Francisco* v. *Superior Court* (1993) 21 Cal.App.4th 1031, 1035 [27 Cal.Rptr.2d 201].) The seeker of information under section 1043 must show that the information sought is relevant to the subject matter of the lawsuit—not simply that he wishes to obtain it. The additional requirement of "good cause" has, as we noted above, been construed to allow the court to disclose only bare-bones information about prior complaints, so that the seeking party can conduct his own investigation. (See *Kelvin L.* v. *Superior Court* (1976) 62 Cal.App.3d 823 [133 Cal.Rptr. 325].)

By contrast, Government Code section 6255 puts the burden on the public agency to show why disclosure should not be ordered. The statutory exemptions are narrowly construed. (*Rogers* v. *Superior Court, supra,* 19 Cal.App.4th 469, 476; *San Gabriel Tribune* v. *Superior Court, supra,* 143 Cal.App.3d 762, 773.) As between CPRA and the post-*Pitchess* statutes, the latter clearly provide more protection to the law enforcement officer involved. The cases cited above which considered the Penal and Evidence Code sections in contrast to the discovery provisions in the Code of Civil Procedure observed that the former were more specific and should reasonably held to control over the more general provisions of the CPRA. (E.g., *City of Fresno* v. *Superior Court, supra,* 205 Cal.App.3d at p. 1476; see also

Code Civ. Proc., § 1859, on construction of statutes, giving priority to the more particular over the more general.) We hold that the same rule applies here. The Press-Enterprise's request must be scrutinized under the standards set forth in Evidence Code sections 1043-1045.

We find the Press-Enterprise's arguments to the contrary to be in good part ingenious, but unpersuasive. First, the Press-Enterprise insists that we make too much out of the differences between the two sets of statutes, citing *CBS, Inc.* v. *Block, supra*, 42 Cal.3d 646, 655-656, for the principle that it is possible to harmonize the exemptions of CPRA with the Evidence Code. However, Government Code section 6255 and Evidence Code section 1040—the statutes in question in *CBS, Inc.* v. *Block*—both placed the burden on the governmental agency seeking to avoid disclosure and no provision in the Evidence Code created special notice requirements. All the court did in that case was reach the obvious conclusion that a requirement that the agency show a "necessity" for withholding documents which outweighed the "necessity" for disclosure (Evid. Code, § 1040) was essentially the same as a requirement that the agency show that the "interest" served by nondisclosure "clearly outweighs" the "interest served by disclosure." (Gov. Code, § 6255.) The decision has no relevance to a case like ours, in which two sets of statutes create significantly different frameworks for determining disclosability.

The Press-Enterprise repeatedly notes that the discussion in *County of Los Angeles, supra*, 18 Cal.App.4th 588, on which we have relied is dicta, being unnecessary to the decision. However, we think it is well reasoned, and not to be disregarded. The newspaper also urges that *County of Los Angeles* is simply incorrect, contending that Penal Code section 832.7 does not provide any protection because that statute refers only to discovery in a "criminal or civil proceeding," and its effect must be so limited.

This argument is logically defective, and has recently been answered in a similar case by a court which provided a Pyrrhic victory to the newspaper seeking disclosure. In *City of Richmond* v. *Superior Court* (1995) 32 Cal.App.4th 1430, 1440 [38 Cal.Rptr.2d 632], the court held that if there was no pending action, CPRA did provide the appropriate avenue of proceeding. However, the court held that the protective provisions of Penal Code section 832.7 remained applicable in determining the newspaper's right to obtain the records.[16] It took the sensible position that "confidential," in section 832.7, *means* "confidential," and thus concluded that the personnel records were exempted under Government Code section 6254, subdivision (k), as records

---

[16]The court apparently felt that the newspaper might be able to draft a viable CPRA request limited to the information which Penal Code section 832.7 expressly allows an agency to disclose—"data regarding the number, type, or disposition of complaints (sustained, not

" 'the disclosure of which is exempted or prohibited pursuant to federal or state law . . . .' " The court also agreed with *County of Los Angeles* in its view that protecting personnel records from disclosure in civil or criminal proceedings would be of little point if the records could be obtained under CPRA. (32 Cal.App.4th at pp. 1438-1441.)

The reading urged by the Press-Enterprise is apparently based on the premise that Penal Code section 832.7 creates a privilege, or at least a condition of confidentiality, which applies *only* in judicial proceedings, and then specifies the circumstances under which the confidentiality may be disregarded. This postulate, as we have indicated, is simply unacceptable. ■ Instead, the statute establishes a general condition of confidentiality which falls directly within the scope of the exemption created by Government Code section 6254, subdivision (k), for records "the disclosure of which is exempted or prohibited pursuant to federal or state law." The following clause, relating to disclosure in judicial proceedings, merely creates a *limited exception* to the general principle of confidentiality.

Under this analysis, which recognizes and gives meaning to both clauses, it is apparent that the Legislature desired to confirm the privilege or exemption for police personnel records, but also to recognize that due process concerns require that parties be given an opportunity to acquire relevant information. (See *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].)[17] Section 832.7 does not create a limited privilege; it creates a general privilege and then carves out a limited exception.

■ The Press-Enterprise also asserts that the concerns expressed in *County of Los Angeles, supra,* 18 Cal.App.4th 588, and *City of Richmond, supra,* 32 Cal.App.4th 1430, with respect to wholesale disclosure of police

---

sustained, exonerated, or unfounded) made against its officers if that information is in a form which does not identify the individuals involved."

The opinion does not discuss the extent to which CPRA provisions differ regarding notice and the required showing to justify disclosure or nondisclosure. These factors were apparently deemed virtually irrelevant due to the court's holding that Penal Code section 832.7 provided absolute protection for the actual personnel files or other information identifying named officers.

We agree that, in the abstract, CPRA may be used to request personnel records if no action or proceeding is pending. However, our decision, like that in *City of Richmond,* makes such a practice pointless.

[17] At oral argument counsel for the Press-Enterprise suggested that it was illogical to suppose that the Legislature intended to create a special entitlement in favor of criminal defendants. In fact, the statutes apply to all parties to judicial proceedings, both civil and criminal. (See, e.g., *Davis* v. *City of Sacramento, supra,* 24 Cal.App.4th 393.) As noted above, the entitlement is founded on due process and the right to a fair trial. The legislative preference for these rights over those representing collectively a generalized desire for information is by no means arbitrary.

personnel records are not well founded. It argues that the qualified confidentiality provisions of CPRA offer a sufficient protection against unjustified disclosure. We cannot agree.

Although Government Code section 6254, subdivision (c) exempts "[p]ersonnel [records] . . . or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy," this exemption would rarely be available to a good faith CPRA request because the public interest in misconduct by police officers would make the disclosure of pertinent records virtually ipso facto *warranted.*

Recognizing that legitimate privacy interests militated against disclosure of baseless charges and investigations which uncovered no wrongdoing, the court in *American Federation of State etc. Employees* v. *Regents of University of California* (1978) 80 Cal.App.3d 913, 918-919 [146 Cal.Rptr. 42], held that section 6254, subdivision (c) provided no exemption for records relevant to charges of misconduct which had been administratively found to be *true.* We think the principle might well be applied even more pointedly to law enforcement officers. After all, such officers hold one of the most powerful positions in our society; our dependence on them is high and the potential for abuse of power is far from insignificant. Furthermore, we must note that, unfortunate as it may be, there is a public perception that misbehavior by law enforcement officers is not infrequently ignored or even covered up by supervisory personnel. Thus, *absent the specific provisions of Penal Code section 832.7*, a sound argument could be made for a broad disclosure of the results of intradepartmental investigations on the basis of the public interest in knowing "what the[] government is up to.' " (*U.S. Dept. of Justice* v. *Reporters Committee, supra*, 489 U.S. at p. 773 [103 L.Ed.2d at p. 795].)[18] Section 832.7's carryover into Government Code section 6254, subdivision (k) is therefore essential to preserve the legislative intent.

---

[18]In its argument under Government Code section 6255, which we do not reach, the City makes an extensive argument to the effect that the "catch-all" exemption of that section protects the records. If this were so, it would support the newspaper's claim that routine disclosure of police personnel records would not be likely under CPRA. However, we have serious reservations concerning the applicability of the catch-all.

As discussed above, it is not logical to suppose that the Legislature left police personnel records as a category of records inadvertently omitted from the myriad of express exemptions. Even if this conclusion is incorrect, section 6255 places the burden on the public agency to show that the public interest in nondisclosure "clearly outweighs" that in disclosure. As we have explained, there are difficulties in reaching such a conclusion when the public interest in disclosure is that of ensuring accountability and fostering public faith and trust. Obviously, by enacting Penal Code section 832.7, the Legislature has conclusively found that the desirability of confidentiality in police personnel matters *does* outweigh the public interest in openness. If the latter section did not exist, however, it is far from clear that courts considering CPRA requests would reach the same conclusion under the standard mandated by Government Code section 6255.

In this context, the City relies upon *Brockway* v. *Department of Air Force* (8th Cir. 1975) 518 F.2d 1184, discussed in *Times Mirror, supra*, Construing a provision in the FOIA not

At oral argument, real party argued that the exemptions set out in section 6254 allow for a weighing of interests by the trial court. This is true only for some of the exemptions, such as that contained in subdivision (c), which makes the exemption for personnel files subject to the qualification that disclosure must "constitute an unwarranted invasion of personal privacy." But many of the exemptions are absolute on their face. For example, library circulation records are exempt under subdivision (j), and the subdivision provides *no* circumstances under which disclosure may be ordered. Qualifications or conditions placed on some exemptions do not affect exemptions which are not so limited.

██ Real party also intimated that there is an absolute, unabridgeable right of access to governmental records. As a matter of constitutional entitlement, this contention has been flatly rejected. (*Black Panther Party* v. *Kehoe, supra*, 42 Cal.App.3d at pp. 654-655.) We also note that the United States Supreme Court has upheld an absolute governmental privilege even in the context of actual litigation. (*United States* v. *Reynolds* (1953) 345 U.S. 1, 11 [97 L.Ed. 727, 734-735, 73 S.Ct. 528, 32 A.L.R.2d 382].) To state the obvious, if the Legislature (or Congress) believed that such a right of access existed, there would have been no need to enact CPRA (or FOIA).[19]

██ Finally, the Press-Enterprise relies on *Bradshaw, supra*, 221 Cal.App.3d 908, for its holding that section 832.7 does *not* provide for absolute confidentiality and that a public agency may release records as described in section 832.8 if it chooses to do so. In that case, a police officer sued the City for releasing to the news media information derived from a disciplinary investigation.

The *Bradshaw* court noted that the Penal Code statutes were designed as a response to the development of "*Pitchess* motions" (*Pitchess* v. *Superior*

---

expressly included in CPRA, the court held that the offer of complete confidentiality in Air Force investigations of airplane crashes was essential. (The court was, however, influenced by national security concerns as well as general concerns for aviation safety.) Compare, however, the California approach in *State of California* ex rel. *Division of Industrial Safety, supra*, 43 Cal.App.3d at page 784, taking the position that employers and employees who know that information concerning operations may be revealed after disclosure to the division may be spurred by this knowledge to exercise greater care and diligence in avoiding hazardous situations; also *Bradshaw* v. *City of Los Angeles* (1990) 221 Cal.App.3d 908 [270 Cal.Rptr. 711], allowing disclosure of personnel investigation records if the public agency thinks it appropriate.

At the very least, if police personnel records were left to the protection of section 6255, the results would probably be so inconsistent that the effect would be to discourage candor due to the apprehension of disclosure.

[19]We also feel constrained to point out that if all of the exemptions were in fact subject to a balancing process—which could only be undertaken after a judicial review of the documents—the burden on the courts might be substantial. Nor should citizens who believe that their records, or information they have provided, will be absolutely confidential, be obliged to submit to routine judicial perusal of the information.

*Court, supra,* 11 Cal.3d 531) and were not drafted out of any concern about the release of information to the news media. It construed the word "confidential" in section 832.7 as governing only court-ordered disclosures in pending actions, and not as "abrogat[ing] a police department's right to disseminate information pursuant to Government Code section 6250 et seq." (221 Cal.App.3d at p. 918.)

The core holding of *Bradshaw* is that the city's disclosure did not give rise to any legal cause of action in the police officer. This result is sustainable on one of the grounds on which the court relied—that the statutes do not provide any penalty or remedy for breach of confidentiality. However, the court in *City of Richmond, supra,* felt that *Bradshaw* went too far in refusing to give full effect to the Legislature's specification of police personnel records as "confidential." So do we.

As has already been mentioned in connection with the decisions in *County of Los Angeles* and *City of Richmond,* the protection of Penal Code section 832.7 is illusory unless that statute is incorporated into CPRA through Government Code section 6254, subdivision (k). Logic does not permit the conclusion that information may be "confidential" for one purpose, yet freely disclosable for another. In the court's apparent concern for allowing the city in that case to disseminate information as a matter of legitimate public interest, the court put a gloss on the word "confidential" which we cannot accept.

We also think the court erred in another respect. *Bradshaw* would apparently permit the agency to *refuse* to disclose information in reliance on Penal Code section 832.7, although this is not entirely clear. However, the court appears to have felt that any privilege was possessed solely by the agency, which could waive it in the public interest. ▮ This approach fails to recognize that the confidentiality privilege is possessed *both* by the agency *and* the subject officer. (*Davis* v. *City of Sacramento, supra,* 24 Cal.App.4th at p. 401; *Hackett* v. *Superior Court* (1993) 13 Cal.App.4th 96, 101 [16 Cal.Rptr.2d 405]; *San Francisco Police Officers' Assn.* v. *Superior Court* (1988) 202 Cal.App.3d 183, 189 [248 Cal.Rptr. 297].) In *Davis,* the court notes that the promise of confidentiality would have had the effect of removing any incentive on the part of law enforcement agencies to shred or otherwise destroy records (24 Cal.App.3d at p. 401, fn. 1); it also encourages complete candor and cooperation (see *Brockway* v. *Department of Air Force, supra,* 518 F.2d 1184). *Bradshaw,* by allowing the agency to leave the individual officer publicly twisting in the wind, makes a choice between confidentiality and public access which, in our view, is inconsistent with the

statutory scheme. If section 832.7 is to have any real meaning for the officer, it must extend a right enforceable by him as well.[20]

In summary, we hold that the records in this case are not protected as "pertaining to pending litigation" (Gov. Code, § 6254, subd. (b)), but *are* protected as records "the disclosure of which is exempted or prohibited by . . . law" (Gov. Code, § 6254, subd. (k)). The trial court erred in directing disclosure.[21] A peremptory writ shall issue as prayed.

Hollenhorst, Acting P. J., and Richli, J., concurred.

A petition for a rehearing was denied September 20, 1995, and the petition of real party in interest for review by the Supreme Court was denied November 16, 1995. Mosk, J., was of the opinion that the petition should be granted.

---

[20]This is as good a time as any to note that the City has submitted a large packet of materials, at least mostly legible, representing the "legislative history" of the post-*Pitchess* statutes as enacted in 1978.

The City makes little effort to use the materials as the foundation for argument other than to cryptically direct our attention to several documents which at least use the words "privilege" or "privileged." On the other hand, the Press-Enterprise makes use of the materials to support an argument which we find unpersuasive, but which we feel required to address.

As the Press-Enterprise cogently points out, early versions of the bill which became the Penal and Evidence Code sections at issue here contained specific provisions recognizing a *privilege* for information in police officer files. Both the employing agency and the officer were expressly recognized as holders of the privilege, and both were given the right to assert the privilege to prevent disclosure absolutely, even as to relevant and material matters.

These provisions were later amended out, for reasons which are impossible to ascertain. The Press-Enterprise suggests that the omissions represent a conscious intention to *reject* the concept of privilege. We cannot agree.

It is certainly not without significance that all interested parties—including official sources —apparently continued to believe that the final version created a privilege. (See Summary Dig. to ch. 630, 4 Stats. 1978, p. 159; "Enrolled Bill Report" dated Sept. 8, 1978.) The documents provided by the City include one report on the amendments which suggests that the language concerning privilege may have been considered "ambiguous and unnecessary" and also created undesirable restrictions on the acquisition of such records for grand jury or prosecutorial purposes.

In our view, the discussion is largely academic and no good purpose is served by attributing a unique significance to the term "privilege." Penal Code section 832.7, as enacted and as presently effective, makes the specified records "confidential." Our conclusion is that this necessarily implies a privilege, albeit qualified by the remainder of the post-*Pitchess* procedures for discovery.

We recognize that the legislative history cited by the court in *San Francisco Police Officers' Assn., supra,* in support of its conclusion that the "privilege" inured both to the officer and the employing agency was matter which was created *before* the "privilege" language was deleted. However, for the reasons discussed in the body of this opinion, we believe that the even if there is no "privilege," the term being considered one of art, nevertheless the legislatively mandated "confidentiality" may be enforced by either the officer or the agency. (See also in *City of Santa Cruz* v. *Superior Court, supra,* 49 Cal.3d at p. 84, the court's expressed concern for "the officer's privacy interests. . . .")

[21]*City of Richmond* comments that the court should not even conduct an in camera hearing under section 6259 where the records are clearly exempt, as they were in that case and this.