TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-307 |
| of | : | |
| | : | September 12, 1996 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE JAMES B. LINDHOLM, COUNTY COUNSEL, SAN LUIS OBISPO COUNTY, has requested an opinion on the following questions:

1. When a grand jury is conducting a civil "watchdog" investigation of a local police agency, does it have the right to examine peace officer personnel records, including citizens' complaints, or information compiled from such records, without first obtaining issuance of a subpoena or court order?

2. Must a grand jury be investigating a specific case or citizen's complaint in order to examine such records?

3. May a grand jury require that such records be provided without the elimination of officers' names or statements or other alterations?

CONCLUSIONS

1. When a grand jury is conducting a civil "watchdog" investigation of a local police agency, it has the right to examine peace officer personnel records, including citizens' complaints, or information compiled from such records, without first obtaining issuance of a subpoena or court order.

2. A grand jury need not be investigating a specific case or citizen's complaint in order to examine such records.

1. 96-307

3. A grand jury may require that such records be provided without the elimination of officers' names or statements or other alterations.

ANALYSIS

In this opinion we are asked to examine a grand jury's civil function "to act as the public's `watchdog' by investigating and reporting upon the affairs of local government . . . ." (*McClatchy Newspapers* v. *Superior Court* (1988) 44 Cal.3d 1162, 1170; see *Brooks* v. *Binderup* (1995) 39 Cal.App.4th 1287, 1290.) The three questions presented for resolution concern the authority of a grand jury to investigate the operations of local law enforcement agencies. Under what circumstances may a grand jury examine peace officer personnel records, including citizens' complaints?

1.    Subpoena or Court Order

The first question to be resolved is whether a grand jury must obtain the issuance of a subpoena or court order in order to review peace officer personnel records, including citizens' complaints. We conclude that such records must be produced for a grand jury's review without issuance of a subpoena or court order.

Preliminarily, we note that a grand jury has broad authority to investigate the conduct of local public officials, including peace officers. With respect to counties and certain special districts, Penal Code section 925[1] provides in part:

> "The grand jury shall investigate and report on the operations, accounts, and records of the officers, departments, or functions of the county including those operations, accounts, and records of any special legislative district or other district in the county created pursuant to state law for which the officers of the county are serving in their ex officio capacity as officers of the districts."

Regarding cities and joint powers agencies, section 925a provides:

> "The grand jury may at any time examine the books and records of any incorporated city or joint powers agency located in the county. In addition to any other investigatory powers granted by this chapter, the grand jury may investigate and report upon the operations, accounts, and records of the officers, departments, functions, and the method or system of performing the duties of any such city or joint powers agency and make such recommendations as it may deem proper and fit. . . ."

With respect to special purpose districts and local agency formation commissions, section 933.5 provides:

_____

[1]All section references are to the Penal Code unless otherwise indicated.

"A grand jury may at any time examine the books and records of any special-purpose assessing or taxing district located wholly or partly in the county or the local agency formation commission in the county, and, in addition to any other investigatory powers granted by this chapter, may investigate and report upon the method or system of performing the duties of such district or commission."

Accordingly, the Penal Code empowers a grand jury in its civil watchdog function to examine any records of cities, counties, and special districts. Such records would include peace officer personnel records, including citizens' complaints, in the custody of these public agencies.

Significantly, we note that the proceedings of a grand jury are confidential. The oath administered to grand jurors requires that each juror "not disclose any evidence brought before the grand jury . . . ." (§ 911.) Section 924.1 makes it a misdemeanor for a grand juror to willfully disclose "any evidence adduced before the grand jury" except when required by a court. In *Farnow* v. *Superior Court* (1990) 226 Cal.App.3d 481, 487-489, the court explained the need for secrecy in the performance of a grand jury's civil watchdog function:

". . . As our Supreme Court stated in considering an issue regarding disclosure of evidence by a grand jury, `[t]he secrecy of all grand jury proceedings is "deeply rooted in our traditions . . . ."' (*McClatchy Newspapers* v. *Superior Court* (1988) 44 Cal.3d 1162, 1173, quoting *Illinois* v. *Abbott & Associates, Inc.* (1983) 460 U.S. 557, 572 [75 L.Ed.2d 281, 293, 103 S.Ct. 1356].) Indeed, this tradition dates to the 12th century, explained as a requirement to prevent the escape of offenders; in the 17th century, secrecy came to be used to protect grand jurors from the influence of the king and `for the most part, grand jury proceedings since that time have been closed to the public and records of such proceedings have been kept from the public eye.' (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1173.) `A number of interests are served by the "strong historic policy of preserving grand jury secrecy" (*United States* v. *Sells Engineering, Inc.* (1983) 463 U.S. 418, 428 [77 L.Ed.2d 743, 103 S.Ct. 3133]). As described by the United States Supreme Court, these are: "First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There would also be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule."' (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at pp. 1174-1175, quoting *Douglas Oil Co.* v. *Petrol Stops Northwest* (1979) 441 U.S. 211, 219 [60 L.Ed.2d 156, 165, 9 S.Ct. 1667].)

"The need for grand jury secrecy is not limited to criminal sessions. The California grand jury is empowered to act in three basic areas: determining whether criminal indictments should be returned (§ 917), determining whether to present formal

accusations of misconduct against public officials requesting their removal from office (§ 922, see Gov. Code, § 3060 et seq.), and acting as watchdog of the public by investigating and reporting upon the affairs of local government (e.g., §§ 888, 919, 920, 925, 925a, 927, 928, 933.1, 933.5, 933.6). (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1170; *Unnamed Minority Members etc. Grand Jury* v. *Superior Court* (1989) 208 Cal.App.3d 1344, 1347; *People* v. *Cohen* (1970) 12 Cal.App.3d 298, 311.) `Of these functions, the watchdog role is by far the one most often played by the modern grand jury in California.' (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1170.) *McClatchy* held that the importance of secrecy is as vital in the context of a watchdog investigation as in that of a criminal indictment. `Compared with indictment proceedings, the efficacy and credibility of watchdog investigations no less require that witnesses testify without fear or reproach by their peers or their superiors. Though the watchdog investigation and report serve a different social purpose than the criminal indictment, eliciting candid testimony is obviously critical to both functions of the grand jury.' (*Id*., at p. 1175.)

"That grand jury sessions, civil and criminal, are intended to be closed to the public is apparent from even a cursory review of the relevant statutes. Under section 915, once a grand jury is impaneled, sworn and charged, `it shall retire to a *private* room, except when operating under a finding pursuant to Section 939.1 . . . .' (Italics added.) Aside from section 939, attendance at sessions of the grand jury is limited by section 934, which prohibits presence of the judge and county counsel as to civil matters unless the grand jury asks for advice. Grand jurors take an oath not to disclose any evidence brought before the grand jury, anything said by the grand jurors or the manner in which the grand jurors vote. (§ 911.) Statutes prohibit and criminalize willful disclosure of evidence adduced before the grand jury (§ 924.1, 924.2), and willful recording of grand jury proceedings without the knowledge and consent of the grand jury. (§ 891.)"

In *Brooks* v. *Binderup, supra*, 39 Cal.App.4th at 1291-1292, the court additionally observed:

"The need for secrecy is vital when the grand jury pursues its criminal indictment function. It is also important when the grand jury conducts a watchdog investigation of local government operations. `Compared with indictment proceedings, the efficacy and credibility of watchdog investigations no less require that witnesses testify without fear of reproach by their peers or their superiors. Though the watchdog investigation and report serve a different social purpose than the criminal indictment, eliciting candid testimony is obviously critical to both functions of the grand jury.' (*McClatchy Newspapers* v. *Superior Court, supra*, 44 Cal.3d at p. 1175.) Secrecy protects the reputations of individuals who are unjustly accused in the course of an investigation. (*Id*. at p. 1176.)"

With these statutory duties of a grand jury in mind, we turn to sections 832.5, 832.7, and 832.8 which describe the peace officer personnel records that are at issue. Section 832.5 provides:

"(a) Each department or agency in this state which employs peace officers shall establish a procedure to investigate citizens' complaints against the personnel of such departments or agencies, and shall make a written description of the procedure available to the public.

"(b) Complaints and any reports or findings relating thereto shall be retained for a period of at least five years."

Section 832.7, the primary focus of this opinion, states:

"(a) Peace officer personnel records and records maintained pursuant to Section 832.5, or information obtained from such records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. *This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury, a district attorney's office, or the Attorney General's office*."

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) Nothing in this section shall affect the discovery or disclosure of information contained in a peace officer's personnel file pursuant to Section 1043 of the Evidence Code."   (Italics added.)[2]

Section 832.8 provides:

"As used in Section 832.7, `personnel records' means any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following:

"(a) Personnel data, including marital status, family members, educational and employment history, home addresses, or similar information.

"(b) Medical history.

"(c) Election of employee benefits.

"(d) Employee advancement, appraisal, or discipline.

---

[2]Evidence Code section 1046 states:

"In any case, otherwise authorized by law, in which the party seeking disclosure is alleging excessive force by a peace officer in connection with the arrest of that party, the motion shall include a copy of the police report setting forth the circumstances under which the party was stopped and arrested."

"(e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties.

"(f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy."

How are these statutes to be interpreted in light of a grand jury's statutory right to examine the records of counties, cities, and districts?

The critical inquiry centers upon the relationship between section 832.7 and Evidence Code section 1043. This relationship was described by the Supreme Court in *City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 81-83, as follows:

"In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as `Pitchess motions' (after our decision in *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531) through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045. The Penal Code provisions define `personnel records' (Pen. Code, § 832.8) and provide that such records are `confidential' and subject to discovery only pursuant to the procedures set forth in the Evidence Code. (Pen. Code, § 832.7.) Evidence code sections 1043 and 1045 set out the procedures for discovery in detail. As here pertinent, section 1043, subdivision (a) requires a written motion and notice to the governmental agency which has custody of the records sought, and subdivision (b) provides that such motion shall include, inter alia, `(2) A description of the type of records or information sought; and [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records.'

"A finding of `good cause' under section 1043, subdivision (b) is only the *first* hurdle in the discovery process. Once good cause for discovery has been established, section 1045 provides that the court shall then examine the information `in chambers' in conformity with section 915 (i.e., out of the presence of all persons except the person authorized to claim the privilege and such other persons as he or she is willing to have present), and shall *exclude* from disclosure several enumerated categories of information, including: (1) complaints more than five years old, (2) the `conclusions of any officer investigating a complaint . . .' and (3) facts which are `so remote as to make disclosure of little or no practical benefit.' (§ 1045, subd. (b).)" (Fn. omitted.)[3]

---

[3]The courts have held that section 832.7 creates a privilege against disclosure which is held by both the employing local agency and the subject peace officer. (*City of Hemet* v. *Superior Court* (1995) 37 Cal.App.4th, 1411, 1431, fn. 20.) Peace officer personnel records are also exempt from *public* disclosure under the Public Records Act. (Gov. Code, § 6254, subd. (k); *City of Hemet* v. *Superior Court, supra*, 37 Cal.App.4th at 1431; *City of Richmond* v. *Superior Court, supra*, 32 Cal.App.4th at 1440.)

Does the exemption from the Evidence Code section 1043 procedures contained in section 832.7, subdivision (a), for "investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury, a district attorney's office, or the Attorney General's office" grant an *affirmative right* for a grand jury, district attorney, or the Attorney General to examine personnel records without issuance of a subpoena or court order?[4]  In 66 Ops.Cal.Atty.Gen. 128 (1983) we answered that question with respect to district attorney investigations:

"While section 832.7 does not expressly authorize a district attorney to obtain access to the personnel records of police officers without a court order, we believe he may do so under a common sense and reasonable interpretation of the statute's language.  Clearly, the Legislature had something in mind when it referred to investigations of a district attorney, and we do not know of any other statute requiring a district attorney to obtain a court order in these circumstances.  A district attorney, however, would not be authorized under section 832.7 to release the information to the public, the exception language in the statute is limited to the district attorney's office for the purposes stated.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Finally, it is to be observed that the information at issue is already in the hands of public officials, is the property of a government agency, and release of the material to another public official, the district attorney, does not mean the loss of `confidentiality.'  (See Gov. Code, § 6254, subds. (c), (f); see also Gov. Code, §§ 6262-6265.)"  (*Id*., at p. 130.)

In *Michael* v. *Gates* (1995) 38 Cal.App.4th 737, the court concluded that the requirements of section 832.7 were inapplicable where a city attorney needed to review a police officer's personnel records for possible impeachment purposes at trial.  The court held that such internal review did not constitute a "disclosure" of the records, citing our 1988 opinion:

"See also 66 Ops.Cal.Atty.Gen. 128, 130 (1983), holding that Penal Code section 832.7 does not prohibit a district attorney from obtaining records in connection with an investigation of an officer or agency.  The opinion relies on the statutory

---

[4]A grand jury may obtain issuance of a subpoena under the terms of section 939.2:

"A subpoena requiring the attendance of a witness before the grand jury may be signed and issued by the district attorney, his investigator or, upon request of the grand jury, by any judge of the superior court, for witnesses in the state, in support of the prosecution, for those witnesses whose testimony, in his opinion is material in an investigation before the grand jury, and for such other witnesses as the grand jury, upon an investigation pending before them, may direct."

Government Code section 7476 allows a grand jury to obtain a judicial subpoena or subpoena duces tecum for certain financial records.

provision that `This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury, a district attorney's office or the Attorney General's office' (Pen. Code § 832.7, subd. (a)), and observes that `. . . the information at issue is already in the hands of public officials, is the property of a government agency, and release of the material to another public official, the district attorney, does not mean the loss of "confidentiality,"' under Government Code sections exempting personnel and other records from disclosure laws. (Gov.Code §§ 6254, 6262-6265.)" (*Id*., at p. 745, fn. 6.)[5]

Consistent with our 1983 opinion and the imprimatur which *Michael* v. *Gates*, *supra*, 38 Cal.App.4th 737, has placed upon its reasoning, we find that a peace officer's personnel records may be reviewed by a grand jury without issuance of a subpoena or court order.[6]

Furthermore, no "disclosure" would be made in violation of the official information privilege provided for in section 1040 of the Evidence Code. (See *City of Hemet* v. *Superior Court*, *supra*, 37 Cal.App.4th at 1426.) Evidence Code section 1040 provides in part:

"(a) As used in this section, `official information' means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and:

"(1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state, or

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity of disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is

---

[5] The court's decision and the rationale of our 1983 opinion also vitiate any suggestion that our opinion in 70 Ops.Cal.Atty.Gen. 28 (1987) [the lawyer-client privilege and work product rule are available in grand jury proceedings] is relevant herein. In our 1987 opinion, we did not have a grand jury exemption such as contained in section 832.7.

[6] Subdivision (e) of section 832.7 is not in conflict with subdivision (a) of the statute. Rather, the two subdivisions may be read in harmony with each other. (See *Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 ["`statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible'"].) Since subdivision (a) exempts grand juries, district attorneys, and the Attorney General from the requirements of Evidence Code section 1043, we cannot construe subdivision (e) as requiring such compliance. Instead, subdivision (e) refers to situations where Evidence Code section 1043 is otherwise applicable to "discovery or disclosure." Here, no "discovery or disclosure" occurs within the meaning of the statute.

against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

In the hands of a grand jury, peace officer personnel records would remain confidential.

Finally, we reject the argument that a subpoena or court order would be necessary so that a peace officer's constitutional right of privacy (Cal. Const., art. I, § 1) would not be violated. In *Michael* v. *Gates*, *supra* 38 Cal.App.4th 737, the court addressed this issue as follows:

"Similarly, we see no violation of appellant's constitutional right to privacy. An essential element of a cause of action for violation of that right is the plaintiff's reasonable expectation of privacy. (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 36.) The privilege created by Evidence Code section 1043 is a conditional privilege (*Hackett* v. *Superior Court*, *supra*, 13 Cal.App.4th at p. 100), and the statutory scheme makes it clear that the right to privacy in the records is limited. Penal Code section 832.7 allows disclosure of the records in a variety of investigations (Penal Code, § 832.7, subd.(a)), and Evidence Code section 1043 establishes procedures by which peace officer personnel records may be obtained for purposes of litigation. Appellant could have had no reasonable expectation of privacy.

"Moreover, `[a]ctionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.' (*Hill* v. *National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th at p. 37.) Appellant has made no showing that the minimal and circumscribed review of his records by the police department and its lawyer during the course of litigation is such an invasion of privacy." (*Id.*, at p. 745.)

Thus, with respect to a peace officer's constitutional right of privacy (see *White* v. *Davis* (1975) 13 Cal.3d 757, 773-776), section 832.7 *limits* a police officer's expectations of privacy, including "in a variety of investigations," such as those by a grand jury. (See also *City of Hemet* v. *Superior Court*, *supra*, 37 Cal.App.4th at 1428-1429.)[7]

We conclude that a grand jury may fulfill its obligations to investigate and report on the operations of county, city, and special districts by reviewing the agencies' records, including peace

---

[7]A peace officer's claim of privilege against self-incrimination under the Fifth Amendment of the United States Constitution would not bar a grand jury from obtaining the records in question. (See *Kastiger* v. *United States* (1971) 406 U.S. 441, 452-453, 459; *Lybarger* v. *City of Los Angeles* (1985) 40 Cal.3d 822, 827; *People* v. *Gwillim* (1990) 223 Cal.App.3d 1254, 1267-1270; *In re Grand Jury Subpoena* (9th Cir. 1996) 75 F.3d 446, 447-448; *Grand Jury Sub. Dated Dec. 7 and 8* v. *U.S.* (10th Cir. 1994) 40 F.3d 1096, 1104; *Gwillim* v. *City of San Jose* (9th Cir. 1991) 929 F.2d 465, 468.)

Under the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, §§ 3300-3311), "an officer refusing to respond to questions or submit to interrogatories shall be informed that failure to answer questions directly related to the investigation or interrogation may result in punitive action" (§ 3303, subd (e); see *Lybarger* v. *City of Los Angeles*, *supra*, 40 Cal.3d at 827; *People* v. *Gwillim*, *supra*, 223 Cal.App.3d at 1267-1268).

officer personnel records.  No "disclosure" would be involved to cause the loss of confidentiality of the records.  Accordingly, no subpoena or court order would be necessary to obtain the records which the grand jury has a right to examine and review.

2.       Specific Case or Complaint

The second question presented for resolution is whether a grand jury must be investigating a specific case or citizen's complaint in order to examine peace officer personnel records, including citizens' complaints.  We conclude that no specific case or complaint would be necessary to establish a grand jury's right to examine such records.

Sections 925, 925a, and 933.5,[8] quoted above, set forth a grand jury's civil watchdog powers.  The statutory authority to examine the book and records of local agencies is not limited to any particular facts or transactions.  The statutory grant of power is plenary in nature as to the scope of the records.

3.       Complete and Accurate Records

The third question presented is whether a grand jury may require that the records be provided without any alterations such as the elimination of police officers' names or statements.  We conclude that a grand jury is entitled to complete and accurate records.

The statutory grounds for a grand jury's examination of the records at issue (§§ 925, 925a, 933.5) do not allow for portions of the records to be, in effect, withheld.  There is no legal basis for alterations, the redaction of names, or the elimination of a peace officer's statements.  An examination by the grand jury of peace officer records does not involve a "disclosure" of such records; complete and accurate records will remain confidential in the hands of the grand jury.

We thus conclude in answer to the third question that a grand jury may require that peace officer personnel records be provided without alterations such as editing out officers' names or statements.

* * * * *

---

[8]At one time, section 933.5's grant of authority was limited to an examination of financial affairs.  (See *Board of Trustees* v. *Leach* (1968) 258 Cal.App.2d 281, 287.)  Such is no longer the case.  (See 78 Ops.Cal.Atty.Gen. 290, 292-294 (1995); 64 Ops.Cal.Atty.Gen. 900, 902 (1981).)