[No. B134958. Second Dist., Div. Two. July 31, 2000.]

COUNTY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ADAM AXELRAD, Real Party in Interest.

**COUNSEL**

Franscell, Strickland, Roberts & Lawrence and Chandra Gehri Spencer for Petitioner.

No appearance for Respondent.

Robert Mann and Donald W. Cook for Real Party in Interest.

**OPINION**

**NOTT, Acting P. J.**—Petitioner, the County of Los Angeles (County), seeks extraordinary writ relief to compel the trial court to vacate its order granting real party in interest Adam Axelrad's motion, brought pursuant to the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.),[1] to compel the production of certain public records in the possession of the Los Angeles County Sheriff's Department.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Axelrad is an attorney employed by the Law Offices of Robert Mann and Donald Cook. Mann and Cook represented, in three civil actions, former inmates of the County jail who allegedly were over-detained, and then sued the County alleging false imprisonment. Mann and Cook sought in each of these cases the disclosure of certain documents. When the discovery motions were denied, Axelrad filed with the County two requests pursuant to the CPRA seeking the identical documents.

Axelrad sought either access to or copies of the Los Angeles County Sheriff's Department Inmate Reception Center Manual (IRC Manual), the Inmate Reception Center Task Force Report (IRC Task Force Report), "paper logs maintained by the Sheriff's Department Inmate Reception Center that tracks erroneous releases and over-detentions," (Logs) and "[o]ver-detention reports made by or under the supervision of Sheriff's Department Captain Betkey to Sheriff's Department Chief Barry King" (Over-detention Reports). The County refused to disclose or provide access to the requested documents. Subsequently, Axelrad, represented by Mann and Cook, filed a request pursuant to sections 6258[2] and 6259[3] of the CPRA for an order compelling the disclosure of the documents. The County opposed the petition claiming application of a number of exemptions contained within the

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

[2] Section 6258 provides: "Any person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under this chapter. The time for responsive pleadings and for hearings in these proceedings shall be set by the judge of the court with the object of securing a decision as to these matters at the earliest possible time."

[3] Section 6259 provides in relevant part: "(a) Whenever it is made to appear by verified petition to the superior court of the county where the records or some part thereof are situated that certain public records are being improperly withheld from a member of the public, the court shall order the officer or person charged with withholding the records to disclose the public record or show cause why he or she should not do so. The court shall decide the case after examining the record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code, papers filed by the parties and any oral argument and additional evidence as the court may allow."

CPRA. The County also claimed that because Axelrad was attempting to "circumvent" prior discovery rulings in the civil actions filed by his employer, the petition should be denied.

The court, apparently assuming that Axelrad had filed his CPRA request in an attempt to obtain documents for use in connection with the three over-detention cases being handled by his employer, opined that nothing contained within the CPRA prohibits a litigant from filing a CPRA request as an "alternative" to civil discovery, and proceeded to the merits of the request.

Following an in camera review, the trial court ordered the County to provide all the records requested except volumes 4 and 8 of the IRC Manual. As to these volumes, the court held that they were exempt from disclosure based on the "public interest" exemption set forth in section 6255 because they "contain matters that, in the public interest, should not be disclosed because the information involves security procedures necessary for running the Inmate Reception Center." As to the remaining documents, the court, without conducting an in camera review, concluded that the County had failed to meet its burden of showing that the documents are exempt from production under the CPRA, and directed production of the records. This petition for writ of mandate followed.

## II. Issues Presented

The County contends that "the CPRA should not be employed to systematically circumvent the effect of prior civil discovery rulings that pertain to the public records sought," and that the trial court erred in finding inapplicable the exemptions found in sections 6254 and 6255.

## III. Discussion

### A. *Standard of Review*

■ A superior court order directing disclosure of public records held by a public agency "is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ." (§ 6259, subd. (c ); *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 115 [40 Cal.Rptr.2d 839, 893 P.2d 1160].) Appellate review of the order is "independent on issues of law, and follows the substantial evidence test with respect to any issues of fact. [Citation.]" (*City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1416 [44 Cal.Rptr.2d 532] (*City of Hemet*).)

## B. *CPRA*

In 1968, the Legislature clarified the scope of the public's right to inspect public records by enacting the CPRA. (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470].) ▮ The act was modeled on its federal predecessor, the Freedom of Information Act (FOIA) (5 U.S.C. § 552 et seq.). (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1338 [283 Cal.Rptr. 893, 813 P.2d 240]; *CBS, Inc. v. Block, supra,* 42 Cal.3d at p. 651.) The two enactments have similar policy objectives and should receive a parallel construction.[4] (*City of Hemet, supra,* 37 Cal.App.4th at p. 1417, fn. 6.)

The CPRA makes clear that "every person" has a right to inspect any public record (§ 6253, subd. (a)), for any purpose (§ 6257.5), subject to certain exemptions, including those found in sections 6254 and 6255.

▮ Section 6254 contains numerous express exemptions, "ranging from certain library records . . . to records of Native American gravesites." (*City of Hemet, supra,* 37 Cal.App.4th at p. 1421.) Section 6255 is a catchall provision. It provides that even if the record does not fall within one of the section 6254 exemptions, the record still can be withheld if the government can demonstrate that "on the facts of [a] particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record." (§ 6255.) These exemptions are to be narrowly construed (*Fairley v. Superior Court* (1998) 66 Cal.App.4th 1414, 1420 [78 Cal.Rptr.2d 648] (*Fairley*)), and the government agency opposing disclosure bears the burden of proving that one or more apply in a particular case. (*Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 476 [23 Cal.Rptr.2d 412].)

The County is a "local agency" subject to the CPRA. (§ 6252, subd. (b).) The requested records are "public records" as that term is defined in the CPRA (§ 6252, subd. (d) [defining a "public record" as "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics"].)

---

[4]The CPRA may not, however, be construed to read into it FOIA language which the CPRA itself does not contain. (*City of Hemet, supra,* 37 Cal.App.4th at p. 1417, fn. 6.)

■ We have no difficulty, on this record, concluding that Axelrad filed his CPRA request in an attempt to obtain documents for use in the over-detention cases filed by his employer.[5] However, he was permitted to do so under the CPRA, which provides that there are no "limitations on access to a public record based upon the purpose for which the record is being requested, if the record is otherwise subject to disclosure." (§ 6257.5.)[6] The reason for such a rule, we believe, is that "[t]here is no practical way of limiting the use of the information, once it is disclosed, to the purpose asserted by the requestor. Indeed, there is no way of assuring that the information will not be used by the requestor for other purposes, or, for that matter, will not be used by third parties who manage to obtain the information once it has been disclosed to [the requestor]." (*Hughes Salaried Retirees v. Adm'r of Hughes* (9th Cir. 1995) 72 F.3d 686, 693 [holding that under the FOIA the question of disclosure cannot turn on the purpose for which the request for information is made].)

We conclude that a plaintiff who has filed suit against a public agency may, either directly or indirectly through a representative, file a CPRA request for the purpose of obtaining documents for use in the plaintiff's civil action, and that the documents must be produced unless one or more of the statutory exemptions set forth in the CPRA apply. The County suggests that an exception to this general rule is warranted in this case because Axelrad filed his CPRA request with the intent of "nullify[ing] and bypass[ing] disfavored discovery rulings." The trial court rejected this argument, and found, as to most of the documents requested by Axelrad, that none of the exemptions set forth within the CPRA apply.

## C. *Axelrad's Alleged Abuse of the CPRA*

The County, relying on *County of Los Angeles v. Superior Court* (1993) 18 Cal.App.4th 588 [22 Cal.Rptr.2d 409] (*Kusar*) and federal cases interpreting

---

[5] For example, in opposition to an ex parte application for a continuance of the hearing date on the CPRA petition, Axelrad's employer admitted that the documents requested were specifically for use in one of the over-detention actions referenced by the County.

[6] Section 6257.5 was enacted in 1998 to codify the holding in *State Bd. of Equalization v. Superior Court* (1992) 10 Cal.App.4th 1177 [13 Cal.Rptr.2d 342]. In that case, the state claimed that the public interest would not be served by the requested disclosure of tax records since "[the petitioner for the records] is a commercial entity and intends to use the material for commercial purposes." (*Id.* at p. 1190.) The Court of Appeal explained that "[w]hat is material is the *public* interest in disclosure, not the private interest of a requesting party; section 6255 does not take into consideration the requesting party's profit motives or needs." (*Id.* at p. 1191.)

the FOIA, claims that because Axelrad is attempting to circumvent "adverse" discovery rulings[7] rendered against the plaintiffs in the over-detention cases being prosecuted by Axelrad's employers, the CPRA petition should have been denied.

In *Kusar*, a legal secretary (Ara Kusar) worked in the law offices of Ernest S. Gould, Esq. Gould represented Frank McMurray who had been arrested by Los Angeles County Deputy Sheriffs Jeffrey Bailey and Charles Morales. McMurray sued the two deputies alleging that they committed an assault and battery upon him and violated his civil rights. (*Kusar, supra*, 18 Cal.App.4th at pp. 590-592.) Gould filed, in McMurray's civil action, discovery requests seeking information regarding every person arrested (for certain particular offenses) by Bailey and Morales over a 10-year period. (*Id.* at pp. 591, 593.) The County refused to produce the information. McMurray brought a motion to compel, which was denied—on the basis that McMurray had failed to meet the good cause requirements of Evidence Code sections 1043 and 1045. (*Kusar, supra*, at pp. 593, 600.) He then filed a petition for a writ of mandate in the Court of Appeal, which was summarily denied. Kusar, at the direction of Mr. Gould, then filed a section 6258 CPRA petition seeking the same information previously denied to McMurray. Kusar tacitly conceded that the CPRA petition sought the same information previously denied under the relevant discovery statutes. (*Kusar, supra*, at p. 593.) Kusar insisted that the plain language of section 6254, subdivision (f)(1) and (2)—which requires a public entity to produce arrest records (subject to certain restrictions)—directed disclosure of the requested information. (*Kusar, supra*, at pp. 593, 595.) The superior court, adopting Kusar's broad interpretation of section 6254, subdivision (f), ordered the County to produce the records. (*Kusar, supra*, at p. 593.) The County sought writ relief to compel the trial court to vacate its order. (*Id.* at p. 500.)

The *Kusar* court, after reviewing the statute's legislative history, concluded that "the records to be disclosed under section 6254, subdivision (f)(1) and (2), are limited to current information and records of the matters described in the statute and which pertain to contemporaneous police activity." (*Kusar, supra*, 18 Cal.App.4th at p. 601.) In reaching its conclusion, the court noted that although Kusar's "request [was] phrased as a request for

---

[7]Although the County claims that these rulings were based on privilege, the County did not provide the trial court with documentation sufficient to show that another court made an order precluding disclosure of any of the documents based on privilege. However, an attorney for the County declared in support of the County's opposition to Axelrad's CPRA petition that "two separate courts have already determined that the documents requested are privileged." Axelrad does not dispute this statement.

arrest information, not as one for information regarding complaints against Bailey and Morales, there [could] be little doubt the ultimate purpose of the request [was] to discover indirectly information of the kind governed by these statutes [(Pen. Code, §§ 832.5, 832.7 and 832.8, together with §§ 1043 through 1046 of the Evid. Code)]" which regulate the maintenance and disclosure of historical information of the kind sought by Kusar. (*Id.* at pp. 599-600.) The court then noted that these statutes "set forth detailed and careful procedures to assure that the sensitive information contained in records relating to allegations of police misconduct will be disclosed only upon a showing of manifest necessity." (*Kusar, supra,* at p. 600.) The court concluded that "[s]uch procedures would be nullified if, as Kusar argues, the same information, or information leading to it, could be obtained as a matter of right through the [CPRA]. Obviously, we cannot construe section 6254, subdivision (f) to require such a result." (*Ibid.*)

*Kusar* holds that section 6254, subdivision (f) may not be interpreted in a way that would allow a CPRA requestor to obtain documents which, if disclosed, would nullify Evidence Code sections enacted to protect against disclosure of confidential peace officer information. (*Kusar, supra,* 18 Cal.App.4th at p. 600.) To allow such a construction would, according to the *Kusar* court, "authorize[] the circumvention of rulings of a court made pursuant to important discovery *statutes*." (*Ibid.*, italics added.)

Consistent with the holding in *Kusar* is *City of Richmond v. Superior Court* (1995) 32 Cal.App.4th 1430 [38 Cal.Rptr.2d 632]. There, a newspaper sought information from investigations on citizens' complaints filed with a police department. (*Id.* at p. 1432.) The court, accepting the reasoning of *Kusar,* stated: "Unlike the secretary in [*Kusar*], the [newspaper] is not conducting an end run around the procedures set forth in Evidence Code sections 1043 and 1046. The [newspaper], through its investigative reporter, made a legitimate public record request, to which CPRA procedures apply." (*Id.* at p. 1440.)

The federal cases cited by the County have no application here.[8] They either hold or suggest, consistent with *Kusar,* that documents normally privileged cannot be obtained through the FOIA; or that implied in the

---

[8] *United States v. Weber Aircraft Corp.* (1984) 465 U.S. 792, 801 [104 S.Ct. 1488, 1493, 79 L.Ed.2d 814]; *John Doe Agency v. John Doe Corp.* (1989) 493 U.S. 146, 153 [110 S.Ct. 471, 475, 107 L.Ed.2d 462]; *NLRB v. Sears, Roebuck & Co.* (1975) 421 U.S. 132, 143 [95 S.Ct. 1504, 1512, 44 L.Ed.2d 29]; *NLRB v. Robbins Tire & Rubber Co.* (1978) 437 U.S. 214, 242 [98 S.Ct. 2311, 2327, 57 L.Ed.2d 159]; *U.S. v. U.S. Dist. Ct., C.D. of Cal., Los Angeles* (9th Cir. 1983) 717 F.2d 478, 481.

FOIA, relevancy is a condition for production and disclosure of public documents once litigation is pending. Here, however, we are not being asked to decide whether the CPRA contains an implied relevancy limitation for those plaintiffs who have filed civil actions against a government agency.[9]

■ The County intimates that the court hearing Axelrad's CPRA request was bound by prior discovery rulings issued in the three cases Axelrad's employers are prosecuting on behalf of individuals claiming to have been over-detained in the County jail. However, a court is not bound by prior rulings unless all of the elements of the collateral estoppel doctrine are present.

A different result is not required by the doctrine of collateral estoppel. ■ The doctrine, which precludes relitigation of issues argued and decided in prior proceedings, may only be applied if several threshold requirements are fulfilled. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].) "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]" (*Ibid.*) The burden of establishing these requirements rests with the party asserting the doctrine. (*Ibid.*) If the burden is met, the collateral estoppel should be applied in a particular setting. (*Id.* at pp. 342-343.)

■ The record in this case can best be described as sparse. While it may be true that other courts have determined that the documents sought by Axelrad are subject to certain privileges, nothing contained within the record

---

[9]Under California's civil discovery rules, a plaintiff is entitled to receive only those documents which are "relevant to the subject matter involved in the pending action" which are themselves "admissible in evidence" or "appear[] reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017, subd. (a).) Under the CPRA, by contrast, a plaintiff is entitled to the production and disclosure of documents without regard to the relevancy of the documents for a particular use, subject to certain exclusions and exemptions. (*Wilder v. Superior Court* (1998) 66 Cal.App.4th 77, 83 [77 Cal.Rptr.2d 629].) California courts appear to have rejected the notion that a plaintiff who has filed suit against a government agency may obtain through the CPRA only those documents relevant to his or her cause of action. (See *Fairley, supra,* 66 Cal.App.4th at p. 1422; *City of Hemet, supra,* 37 Cal.App.4th at pp. 1420-1421.) We need not decide the issue. However, we note that the documents sought by Axelrad appear to be relevant to the over-detention cases being handled by his employer.

shows that the issue sought to be precluded from relitigation in the CPRA petition was identical to that decided in the three over-detention cases referenced by the County. Nor can we determine if the issue was "actually litigated" or "necessarily decided" in the former proceedings. Moreover, there is no information contained within the record concerning the finality of the prior proceedings. We conclude, therefore, that the superior court hearing Axelrad's CPRA petition was not bound by any discovery rulings that may have been issued in the three over-detention cases referenced by the County.

We do not mean to suggest that we condone abuse of discovery. A claim that a plaintiff has abused discovery, however, should be made to the court assigned to the civil action, not to the court hearing the CPRA petition. If, for example, a plaintiff obtains documents under the CPRA after the discovery cutoff has passed, the court hearing the civil action may, if the facts warrant it, bar the use of the documents at trial. Nothing contained in this record suggests that Axelrad disobeyed any discovery rules in any of the over-detention cases filed by his employers. The contention is that he attempted to obtain from the court hearing the CPRA request a ruling contrary to discovery rulings issued in the over-detention cases. While we agree that a court hearing a CPRA request should be made aware of any prior discovery rulings issued with respect to the documents being requested in connection with a CPRA petition, the court is not bound by these rulings unless all of the collateral estoppel factors set forth above are present.

D. *Section 6254, Subdivision (b)—The Pending Litigation Exception*

■ Section 6254, subdivision (b) prohibits the disclosure of "[r]ecords pertaining to pending litigation to which the public agency is a party . . . until the pending litigation . . . has been finally adjudicated or otherwise settled." The County claims that the IRC Task Force Report, the Over-detention Reports and the Logs all fall within this exemption.[10]

A document is protected from disclosure under the pending litigation exemption only if the document was specifically prepared for use in litigation. (*City of Hemet, supra,* 37 Cal.App.4th at pp. 1418-1419.) Section 6254,

---

[10]The County also claims the section 6255 catchall exemption applies to the Over-detention Reports and Logs. Because there is evidence contained within the record suggesting that these documents contain information which implicate security concerns at the jail and privacy interests of inmates and law enforcement personnel, an in camera review of the Over-detention Reports and Logs should be made to determine whether the public interest in withholding the records clearly outweighs the public interest in disclosure.

subdivision (b), however, is "not duplicative of subdivision (k), through which Code of Civil Procedure section 2018 applies and protects *attorney* work product, but rather subdivision (b) confers upon public agencies a broader exemption from disclosure by protecting the 'work product' generated by a public agency in anticipation of litigation." (*Fairley, supra,* 66 Cal.App.4th at p. 1422, fn. 5.)

In *City of Hemet,* a police sergeant for the city became concerned over drug use at the high school attended by his children. He collected certain information, and eventually faxed to school officials a list of students he believed to be involved in the use and/or sale of drugs. The faxed memorandum also reported that a deputy sheriff was aware of the drug use but did not prevent or disclose it because one of the students had a photograph of the deputy smoking marijuana and threatened to publicize it. This action by the sergeant became the subject of some public interest when the memorandum, which had been intended for the sole use of a vice-principal, was circulated or shown to other persons. The city eventually conducted an investigation of the incident. The deputy sheriff mentioned by name in the fax filed a tort claim with the city. (*City of Hemet, supra,* 37 Cal.App.4th at p. 1416.) After the investigation was completed, a newspaper filed a CPRA request with the city seeking the internal investigation report. The city refused to disclose the records, and the newspaper filed a petition pursuant to section 6258. The superior court found the records to be discoverable, subject only to redaction in the interests of the privacy of some of those concerned, and the city sought a writ of mandate which the Court of Appeal granted.

On appeal, the court accepted the newspaper's argument that a government agency "cannot take records which were not exempted in their genesis and transform them into exempt 'litigation' documents simply because they *later* become relevant to a lawsuit." (*City of Hemet, supra,* 37 Cal.App.4th at p. 1418, original italics), and concluded that under the "pending litigation" exemption in section 6254, subdivision (b), a document is protected from disclosure only if it was specifically prepared for use in litigation. (*City of Hemet, supra,* at p. 1420.)

In *Fairley,* an individual filed a CPRA request seeking documents relating to his arrest. (*Fairley, supra,* 66 Cal.App.4th at p. 1417.) The trial court denied the petition, without prejudice, until the pending litigation between the CPRA requestor and the government agency was finally settled or adjudicated. (*Id.* at p. 1419.) The requestor filed a writ petition, claiming that the records were not exempt under the CPRA. (*Ibid.*) The *Fairley* court,

agreeing with the construction of the pending litigation exemption advocated by the court in *City of Hemet* (*Fairley, supra,* 66 Cal.App.4th at p. 1421), held that "a public entity may refuse to disclose documents which it prepares for use in litigation." (*Id.* at p. 1422, fn. omitted.) The court noted that "[t]he construction we give to 'pending litigation,' which focuses on the purpose of the document, serves to protect documents created by a public entity for its own use in anticipation of litigation, which documents it reasonably has an interest in keeping to itself until litigation is finalized. In this way, a litigant opposing a public entity is prevented from taking unfair advantage of the public agency status of his or her opponent." (*Id.* at pp. 1421-1422.)

In *Fairley*, the individual filing the CPRA request sought public records relating to his arrest by a government agency. (*Fairley, supra,* 66 Cal.App.4th at p. 1417.) In *City of Hemet*, a reporter sought documents involving an investigation into an officer's alleged misconduct. (*City of Hemet, supra,* 37 Cal.App.4th at pp. 1415-1416.) Here, by contrast, the documents sought are not limited to a specific incident of over-detention. However, this does not render the pending litigation exemption inapplicable. The issue to be resolved by the trial court is whether the documents sought were specifically prepared by the County for use in litigation. (*City of Hemet, supra,* 37 Cal.App.4th at p. 1420; *Fairley, supra,* 66 Cal.App.4th at p. 1422.) In this application of the exemption, the focus will be on the nature of the document, not on the identity of the CPRA requestor or the use he or she intends to make of the document. Therefore, a trial court will not be required to engage in a guessing game as to whether the requestor has a civil suit pending against the agency, or whether a plaintiff who has such a suit pending has prevailed upon someone unconnected to the litigation to file the CPRA request.

The trial court determined that "[w]hile the CPRA, through [sections 6254, subdivision (b) and 6254, subdivision (k)] recognizes an exemption for public records reflecting attorney work-product, that exemption is inapplicable here. The County has not shown that the primary purpose in preparing the requested records was for the purpose of pending litigation." This suggests the trial court believed the exemption found in section 6254, subdivision (b) is duplicative of the exemption for attorney work product found in subdivision (k). Accordingly, we remand this case for an in camera review of the documents. The court's focus should be on whether the Over-detention Reports, Logs and IRC Task Force Report were specifically prepared by the County for use in litigation. If so, the records are protected from disclosure under the pending litigation exemption set forth in section 6254, subdivision (b).

---

E. *Section 6254, Subdivision (k) Privilege Exemptions*

Section 6254, subdivision (k) provides that a public entity need not disclose "[r]ecords[,] the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege."

1. *Attorney Work Product Privilege*

 The attorney work product rule, codified in Code of Civil Procedure section 2018, "creates for the attorney a qualified privilege against discovery of general work product and an absolute privilege against disclosure of writings containing the attorney's impressions, conclusions, opinions or legal theories." (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1250 [245 Cal.Rptr. 682].) The protection afforded by the privilege is not limited to writings created by a lawyer in anticipation of a lawsuit. It applies as well to writings prepared by an attorney while acting in a nonlitigation capacity. (*Rumac, Inc. v. Bottomley* (1983) 143 Cal.App.3d 810, 815 [192 Cal.Rptr. 104].)

The County claims that the IRC Task Force Report, Over-detention Reports and Logs are protected by the attorney work product privilege because they were prepared in anticipation of litigation, and at the direction of counsel. The IRC Task Force Report, the County claims, is protected for two additional reasons. "First, the report is a direct manifestation of the mental impressions, conclusions, opinions, and legal theories of James Owens, the attorney assigned to the task force and the attorney who directly participated in the report's preparation. Second, the work product doctrine applies because the report was created with the anticipation that litigation, with respect to issues addressed in the report, would arise. Had there been no possibility of litigation regarding the matters addressed by the document, the extraordinary step of forming a task force to examine these concerns would not have been taken. In other words, the report was not prepared in the ordinary course of business."

Evidence contained within the record suggests that the Over-detention Reports, Logs and IRC Task Force Report may be protected from disclosure by the attorney work product privilege. An in camera inspection of the documents will resolve the matter.

## 2. *Official Information Privilege*

Evidence Code section 1040, subdivision (b)(2) provides that "A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and: [¶] . . . [¶] (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice."

After an in camera review, the trial court ordered the County to disclose seven of the nine volumes of the IRC Manual. The court determined that "Volume 4 - Emergency Operating Procedures," and "Volume 8 - Miscellaneous Line Procedures" of the IRC Manual were protected from disclosure under section 6255. As to the remaining volumes, the court held that neither the official information privilege nor the "public interest" exemption set forth in section 6255 applied. In reaching that portion of its decision holding the official information privilege inapplicable, the court commented that the County had "not pinpointed any particular 'sections' that may be especially inappropriate for disclosure."

While this is true, the County did submit the declaration of Charles M. Jackson, captain of the inmate reception center who declared that "The IRC Manual contains sensitive information about such subjects as the Security Plan employed at the IRC, the manner in which unwarranted intrusions may occur, procedures employed during emergencies and the duties of various personnel during emergencies, lock down procedures, security inspections, the delivery and processing of mail, visitor processing procedures, the processing and verification of bonds, and numerous other subjects, information which could be used in a countless number of ways to compromise the security of IRC and the safety of [law enforcement officers] and inmates. [¶] . . . In essence, the information contained in the IRC Manual could be employed to bypass, circumvent, usurp, and neutralize the very procedures described therein to successfully smuggle contraband (including weapons), facilitate escapes or early releases, and effectuate any one of a number of other events or scenarios, both foreseeable and unforeseeable, that could dangerously compromise the security of IRC and severely disrupt its orderly operation."

What Captain Jackson articulates is that while disclosure of certain portions of the IRC Manual may seem innocuous to the layperson untrained in

jail and law enforcement security, such information could be utilized to jeopardize institutional security. The County offers as an example, if a member of the public were given access to the details regarding release processing outlined in volume 5, then that person could utilize such information to hamper, distort or prematurely effectuate the release process.

The trial court's statement that the County did not "pinpoint" sections of the IRC Manual that "may be especially inappropriate for disclosure" suggests the trial court did not conduct an in-depth review of the IRC Manual. In fairness to the trial court, the County should have "pinpointed" the portions of the IRC Manual the County contends contain "sensitive information" as discussed by Captain Jackson.

Given the overriding public interest in the safety and welfare of the inmates and the deputies working in the jail and the legitimate concern for security, the trial court should be given a further opportunity to review the IRC Manual in camera. Therefore, we direct the trial court, on remand, to afford the County an opportunity to provide more detailed information to the court specifying the further sections of the IRC Manual, if any, where disclosure would be "against the public interest."

F. *Section 6255 Deliberative Process Privilege*

Section 6255 exempts from disclosure documents which are protected by the deliberative process privilege. (*Wilson v. Superior Court* (1996) 51 Cal.App.4th 1136, 1142 [59 Cal.Rptr.2d 537].) The County claims the Task Force Report, Over-detention Reports and Logs are protected under the deliberative process privilege which protects "materials reflecting deliberative or policymaking processes" and "factual information . . . including 'predecisional' documents, that is, documents which are prepared to assist an agency decision-maker in making a decision." (*Ibid.*)

The trial court found this privilege inapplicable because the County offered "no evidence to support it." A review of the record shows that the County submitted declarations from sheriff's department personnel that indicated that the Task Force Report, Over-detention Reports and Logs were used by sheriff's department managers to assist them in making agency-related decisions. We conclude, therefore, that an in camera review of these documents is required in order to determine whether the deliberative process privilege is applicable.

## IV. DISPOSITON

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting real party in interest Adam Axelrad's CPRA motion to compel the production of certain documents in the possession of the Los Angeles County Sheriff's Department, and to thereafter conduct in camera reviews of the IRC Manual, the IRC Task Force Report, Logs and Over-detention Reports in conformity with the views expressed herein. The temporary stay is vacated. Petitioner's request for attorney fees is denied. Each party is to bear its own costs in this original proceeding.

Cooper, J., and Mallano, J.,* concurred.

Petitioner's petition for review by the Supreme Court was denied November 21, 2000.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.