[No. G034238. Fourth Dist., Div. Three. Dec. 15, 2004.]

LAGUNA BEACH COUNTY WATER DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
VIOLET WOODHOUSE, Real Party in Interest.

1454

**COUNSEL**

Horvitz & Levy, Mitchell C. Tilner, Kim L. Nguyen; Law Offices of Robert J. Gokoo and Robert J. Gokoo for Petitioner.

No appearance for Respondent.

Law Offices of Marjorie G. Fuller, Marjorie G. Fuller; Bois & MacDonald and Thomas J. Bois for Real Party in Interest.

**OPINION**

**RYLAARSDAM, Acting P. J.**—The primary question presented is whether, by sending letters containing work product to auditors for petitioner Laguna Beach County Water District (defendant), defendant's lawyer waived the right to assert attorney work product protection. Because this disclosure did not contravene the purpose of the work product doctrine, there was no waiver, and defendant is not required to produce the letters.

As to the other documents at issue, based on our in camera review, we have determined that one letter and its attachments and attachments to a second letter do not contain privileged information or work product and thus must be produced. The remaining documents, however, are subject to the attorney-client privilege, attorney work product protection, or both and need not be disclosed.

After oral argument but before the opinion was filed, defendant advised us that the parties intended to complete a settlement of the action by the first week in January, at which time it would withdraw its petition. Even had a request to dismiss been filed, at this stage in the proceedings we have the discretion to deny it and decide the case. (Cal. Rules of Court, rule 20(c);

*Defend the Bay v. City of Irvine* (2004) 119 Cal.App.4th 1261, 1278, fn. 6 [15 Cal.Rptr.3d 176].) Our decision "establishes a new rule of law" and "involves a legal issue of continuing public interest." (Cal. Rules of Court, rule 976(b)(1) & (3).) Therefore, we grant the petition in part and order the trial court to vacate its prior order and issue a new order consistent with the terms of this opinion.

## FACTS

Real party in interest Violet Woodhouse (plaintiff) sued defendant and others for allegedly defective construction of a reservoir near her home. The complaint included causes of action for inverse condemnation, private and public nuisance, trespass, negligence, and declaratory relief. Defendant answered the complaint with a general denial and 77 affirmative defenses. In several of the affirmative defenses, defendant alleged it had no knowledge or notice of any dangerous conditions, either at all or in sufficient time to take precautionary measures.

Defendant belongs to the Association of California Water Agencies/Joint Powers Insurance Authority (ACWA), "a California public entity risk pool operating under Section[s] 990.4 and 990.8 of the Government Code," and "receives liability protection through its participation . . . ." Robert Gokoo, defendant's attorney, was retained by ACWA to represent defendant on this and several other matters.

Plaintiff served deposition subpoenas on ACWA and on Diehl, Evans & Company (Diehl), an accounting firm that conducted audits of defendant. Requested documents from ACWA included those related to any agreement by ACWA to cover claims against defendant arising out of the construction and those related to defendant's potential liability for such claims. The subpoena to Diehl sought documents concerning the construction and documents related to Diehl's services to defendant in connection with its potential liability arising out of the construction.

Defendant refused to produce 19 documents, all but two of them letters from Gokoo to ACWA or Diehl, and filed a motion to quash the subpoenas or for a protective order. It asserted, among other things, that the documents were protected by the attorney-client privilege and work product doctrine. After a discovery referee was appointed, defendant provided a privilege log to plaintiff and the referee.

The referee conducted an in camera review and found one of the 19 withheld documents plus attachments to two other documents should be produced. He determined that the others were protected by the attorney-client privilege, the work product doctrine, or both. In connection with ruling on the referee's recommendations, the trial judge also reviewed the documents in camera. After the hearing on the matter, the trial court ruled that "any applicable attorney/client privileges and/or work product protections that normally would apply to [certain] documents at issue" had been waived and ordered defendant to produce eight documents, six letters from Gokoo to ACWA and two letters from Gokoo to Diehl.

Defendant filed the instant petition, sought a stay, and filed the documents at issue under seal with a request we review them. We stayed production of the documents pending our decision.

## DISCUSSION

*Letters From Gokoo to ACWA*

The trial court ordered six letters from Gokoo to ACWA produced on the ground the attorney-client privilege, the work product doctrine, or both, had been waived. We agree one letter, plus its attachments, and the attachment to another letter must be produced because this material was never protected in the first place. As to the other documents, however, there was no waiver.

Plaintiff contends the waiver occurred when defendant "assert[ed] affirmative defenses in which it touted its investigation or lack of knowledge of defects in the construction of the reservoir." She relies on *Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110 [68 Cal.Rptr.2d 844], where the plaintiff brought suit based on employment discrimination. Before the action was filed, the defendant retained a law firm to investigate the claims. The firm subsequently summarized its findings in a letter to the defendant. The plaintiff served a deposition subpoena on the law firm seeking any documents dealing with the investigation; the law firm objected based on the attorney-client privilege and the work product doctrine.

In deciding the writ petition, the appellate court analyzed the nature of the underlying employment discrimination action, determining that "the adequacy of the employer's investigation of the employee's initial complaints could be a critical issue if the employer chooses to defend by establishing that it took reasonable corrective or remedial action. [Citations.]" *(Wellpoint Health Networks, Inc. v. Superior Court, supra,* 59 Cal.App.4th at p. 126.) Thus, if

the defendant "inject[s] into the lawsuit . . . an issue concerning the adequacy of the investigation," even though "the investigation was undertaken by an attorney or law firm," it has "waive[d] . . . the attorney-client privilege and work product doctrine." (*Id.* at p. 128.)

Such is not the case here. As defendant explains, the documents at issue "detail[] the status of pending claims resulting from the reservoir construction and investigative facts surrounding some of those claims." In other words, they deal with defendant's postconstruction investigation. That has nothing to do with the affirmative defenses that raise defendant's knowledge about the property and the project prior to and at the time of the construction. Without deciding the validity of plaintiff's theory that defendant waived the privilege and protection by placing its preconstruction investigation at issue, these documents do not relate to that defense. As *Wellpoint* noted, "The adequacy or thoroughness of a defendant's investigation of [a] plaintiff's claim is simply irrelevant in the typical civil action." (*Wellpoint Health Networks, Inc. v. Superior Court, supra,* 59 Cal.App.4th at p. 126.) Therefore, the letters dated May 16, 2001, July 13, 2001, and August 3, 2001, and the three-page letter dated August 27, 2001, are not discoverable.

■ However, we disagree with the trial court's finding that the one-page letter dated August 27, 2001, with enclosures was subject to work product protection or the attorney-client privilege to begin with. It merely transmits nonprotected documents. Documents that are not originally protected do not become so merely by being provided to or transmitted by an attorney. (*2,022 Ranch v. Superior Court* (2003) 113 Cal.App.4th 1377, 1388 [7 Cal.Rptr.3d 197].) Similarly, the letter dated October 1, 2001, transmits nonprivileged documents, which must be produced as well. But nothing in the answer waived the privilege or protection as to the contents of the letter itself, and therefore it need not be produced.

*Letters from Gokoo to Diehl*

The other documents at issue are two letters from Gokoo to Diehl, defendant's auditors. The letters were responses to audit inquiries where Gokoo, as counsel for defendant, was asked to provide Diehl with information about pending or threatened litigation against defendant that might affect its financial condition. These letters are routinely sent by lawyers to auditors preparing financial statements on behalf of a mutual client. (Apfelberg & Wright, *Responding to Audit Inquiry Letters: Working With Your Client to Provide Full Disclosure While Protecting Sensitive Information* (Aug. 1999) 18 Am. Bankr. Inst. J. 22 & fn. 1.) There are industry-wide accounting guidelines that govern the information an auditor must obtain regarding such claims. (Sharp & Stanger, *Audit-Inquiry Responses in the Arena of Discovery:*

*Protected by the Work-Product Doctrine* (2000) 56 Bus. Law. 183, 184 & fns. 2, 3 (Sharp).) And the American Bar Association has issued a policy regarding attorneys' responses to audit inquiries. (*Id.* at p. 183.)

The accounting guidelines state that lawyers should be asked to set out "a description of the matter, the action the company plans to take, 'an evaluation of the likelihood of an unfavorable outcome, and an estimate, if one can be made, of the potential loss.' " (Sharp, *supra*, at p. 185, fn. omitted.) Thus, an attorney responding to an audit inquiry is asked for explanations, opinions, and conclusions about pending matters. Gokoo's letters to Diehl contain his thoughts and ideas about pending actions. This is clearly work product. Code of Civil Procedure section 2018, subdivision (c) provides that "[a]ny writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances."

The question we must address is whether disclosure by Gokoo of his thoughts, impressions, and conclusions about pending litigation to defendant's auditors waived his work product protection. " 'The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation.' " (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1256 [245 Cal.Rptr. 682]; see also Code Civ. Proc., § 2018, subd. (a).) "Thus, work product protection 'is not waived except by a disclosure wholly inconsistent with the purpose of the privilege, which is to safeguard the attorney's work product and trial preparation. [Citations.]' [Citation.]" (*OXY Resources California v. Superior Court* (2004) 115 Cal.App.4th 874, 891 [9 Cal.Rptr.3d 621].)

Here, the letters themselves make it clear Gokoo did not intend to waive protection. The top of each letter contains the notation "ATTORNEY-CLIENT AND ATTORNEY WORK PRODUCT COMMUNICATION." Disclosure of the information was not casual, unthinking, or even voluntary. Nothing in the record shows Gokoo would have sent these letters without defendant's request and a requirement imposed by at least good faith, if not a more stringent duty, to comply with the request.

Moreover, disclosure operates as a waiver only when otherwise protected information is divulged to a third party " 'who has no interest in maintaining the confidentiality . . . of a significant part of the work product.' [Citations.]" (*OXY Resources California v. Superior Court, supra,* 115 Cal.App.4th at p. 891.) There is no evidence that Diehl did not intend to or in fact maintain the confidentiality of the information. Nothing in the record shows that any of the contents of the two letters would be or were disclosed in the audits.

This is consistent with the auditing guidelines that only require disclosure of a loss contingency, in a footnote, no less, where there is a " 'reasonable possibility' of loss or additional loss beyond the amounts already accrued" for a claim that probably "will be asserted and an unfavorable outcome is reasonably possible." (Allen, *Ethical and Liability Risks in Auditor Response Letters* (2003) 77-Jan Fla. B.J. 10, 12.) Even if a loss contingency was noted, it would not disclose Gokoo's thoughts, impressions, or opinions (Code Civ. Proc., § 2018, subd. (c)) or " 'a significant part of [Gokoo's] work product.' [Citations.]" (*OXY Resources California v. Superior Court, supra,* 115 Cal.App.4th at p. 891.)

The court ordered production of the documents on the ground that any attorney-client privilege or work product protection had been waived. Although not so specifying in its ruling, the court apparently found waiver based on the fact that the Diehl's audit of defendant would be made public. This is the ground plaintiff urged in the trial court.

Plaintiff's argument in this proceeding is not wholly clear but appears to be a variation on that theme. She relies on *United States v. Arthur Young & Co.* (1984) 465 U.S. 805 [79 L.Ed.2d 826, 104 S.Ct. 1495], which held there was no accountant work product for tax accrual workpapers. (*Id.* at pp. 815–816.) The court characterized an "independent auditor [as one who] assumes a *public* responsibility transcending any employment relationship with the client." (*Id.* at p. 817.) On that basis, plaintiff concludes the letters to Diehl "are no longer privileged because they were sent to a public accountant performing a public function."

This conclusion has no basis in law or logic. That Diehl was "performing a public function" does not mean it would divulge protected information. And, as noted above, there is no evidence Gokoo knew or suspected Diehl would disclose his work product or that Diehl in fact did so.

Neither party cited nor did we find any California law dealing with the specific question of whether work product loses its protection if it is disclosed to an auditor in an audit response letter. The few cases from federal courts have come down on both sides of this issue. For example, in *Tronitech, Inc. v. NCR Corp.* (S.D.Ind. 1985) 108 F.R.D. 655, the court held an audit response letter was protected by the work product rule (Fed. Rules Civ. Proc., rule 26(b)(3) (28 U.S.C.)) because it was "comprised solely of an attorney's opinion." (108 F.R.D. at p. 656.) Further, "[a]n audit letter is not prepared in the ordinary course of business but rather arises only in the event of litigation. It is prepared because of the litigation, and it is comprised of the sum total of the attorney's conclusions and legal theories concerning that litigation." (*Ibid.*)

■ The cases finding against the protection are distinguishable. First, as interpreted in some circuits, the federal work product doctrine is more limited than California's, with its protection extending only to documents "prepared in anticipation of litigation or for trial . . . ." (Fed. Rules Civ. Proc., rule 26(b)(3) (28 U.S.C.); see, e.g., *JumpSport, Inc. v. Jumpking, Inc.* (N.D.Cal. 2003) 213 F.R.D. 329, 330–331; *Dawson v. New York Life Ins. Co.* (N.D.Ill. 1995) 901 F.Supp. 1362, 1368.) In California, however, "[t]he protection afforded by the [attorney work product doctrine] is not limited to writings created by a lawyer in anticipation of a lawsuit. It applies as well to writings prepared by an attorney while acting in a nonlitigation capacity. [Citation.]" (*County of Los Angeles v. Superior Court* (2000) 82 Cal.App.4th 819, 833 [98 Cal.Rptr.2d 564].) Thus, *United States v. Gulf Oil Corp.* (Temp.Emer.Ct.App. 1985) 760 F.2d 292 is inapt because the decision not to afford work product protection to audit inquiry responses was based on the finding that the "documents were not created to assist . . . in the litigation . . . ." (*Id.* at pp. 296–297.)

Moreover, in *In re Hillsborough Holdings Corp.* (Bankr. M.D.Fla. 1991) 132 B.R. 478, the court did not rely on the work product doctrine. The decision to require production of audit inquiry responses was based on the finding that the documents were not protected by the accountant-client privilege. (*Id.* at pp. 480–481.)

■ Thus, based on the contents of the letters, which contain the attorney's thoughts, impressions, and opinions, plus the purpose of the work product doctrine, and the rule that waiver occurs only when work product is disclosed to a third party " 'who has no interest in maintaining the confidentiality . . . of a significant part of the work product' " (*OXY Resources California v. Superior Court, supra,* 115 Cal.App.4th at p. 891), we conclude Gokoo's audit response letters to Diehl remained protected work product. Based on our determination on this ground, we have no need to and do not decide the effect of the attorney-client privilege on these two documents.

## DISPOSITION

The petition is granted. Let a writ of mandate issue directing the trial court to vacate its order requiring petitioner to produce all of the foregoing documents and to issue a new order directing that petitioner produce the

one-page letter from Gokoo to ACWA dated August 27, 2001, and its attachments, and the attachments to the letter from Gokoo to ACWA dated October 1, 2001. The parties shall bear their own costs incurred in this proceeding.

Moore, J., and Fybel, J., concurred.