BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE JOE NATION, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
 1. Is parcel boundary map data maintained in an electronic format by a county assessor subject to public inspection and copying under provisions of the California Public Records Act?
 2. If so, in what period of time must a county furnish a copy of the data upon request of a member of the public?
 3. What fee may be charged by a county for furnishing a copy of the data to a member of the public?
 CONCLUSIONS
1. Parcel boundary map data maintained by a county assessor in an electronic format is subject to public inspection and copying under provisions of the California Public Records Act.
2. A copy of parcel boundary map data maintained in an electronic format by a county assessor must be furnished "promptly" upon request of a member of the public.
3. The fee that may be charged by a county for furnishing a copy of parcel boundary map data maintained in an electronic format by a county assessor is generally limited to the amount that covers the direct cost of producing the copy but may include certain other costs depending upon the particular circumstances as specified in the California Public Records Act.
 ANALYSIS
The questions presented for resolution concern detailed geographic information that is regularly prepared, maintained, and updated for use by California's county assessors to describe and define the precise geographic boundaries of "assessor's parcels" — units of real property for which property taxes are assessed throughout the state. Most counties have converted much of this information, including parcel maps, into an electronic format. Once converted, the information may be combined with other kinds of information for use in "geographic information systems," which provide the ability to conduct complex comparisons and analyses useful to county assessors, other public agencies, and private entities. (See Fish G. Code, § 2855; Gov. Code, §§ 51010.5, 51017, 65891.5; Health Saf. Code, §§ 25284.1,25292.4, 25299.97; Pen. Code, § 3003; Pub. Res. Code, §§ 4750.7,30335.5; Wat. Code, §§ 13193, 79080; see also County of Suffolk,N.Y. v. First Am. Real Estate Solutions (2d Cir. 2001)261 F.3d 179, 186, fn. 4.)[1]
We are asked whether copies of this parcel boundary map data in an electronic format must be made available by counties to members of the public upon request under provisions of the California Public Records Act (§§ 6250-6276.48; "Act"). If disclosure is required, when must a copy be furnished, and what amount may be charged for the copy? We conclude that disclosure is required and that the Act specifies "prompt" disclosure upon payment of a fee that is limited in most cases to the cost of producing the copy.
1. Right to Inspect and Copy
Most records of state and local public agencies are subject to disclosure to members of the public upon request. Section 6253 provides:
 "(a) Public records are open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record, except as hereafter provided. Any reasonably segregable portion of a record shall be available for inspection by any person requesting the record after deletion of the portions that are exempted by law.
 "(b) Except with respect to public records exempt from disclosure by express provisions of law, each state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment of fees covering direct costs of duplication, or a statutory fee if applicable. Upon request, an exact copy shall be provided unless impracticable to do so.
 "(c) Each agency, upon a request for a copy of records, shall, within 10 days from receipt of the request, determine whether the request, in whole or in part, seeks copies of disclosable public records in the possession of the agency and shall promptly notify the person making the request of the determination and the reasons therefor. In unusual circumstances, the time limit prescribed in this section may be extended by written notice by the head of the agency or his or her designee to the person making the request, setting forth the reasons for the extension and the date on which a determination is expected to be dispatched. No notice shall specify a date that would result in an extension for more than 14 days. When the agency dispatches the determination, and if the agency determines that the request seeks disclosable public records, the agency shall state the estimated date and time when the records will be made available. As used in this section, `unusual circumstances' means the following, but only to the extent reasonably necessary to the proper processing of the particular request:
 "(1) The need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request.
 "(2) The need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records that are demanded in a single request.
 "(3) The need for consultation, which shall be conducted with all practicable speed, with another agency having substantial interest in the determination of the request or among two or more components of the agency having substantial subject matter interest therein.
 "(4) The need to compile data, to write programming language or a computer program, or to construct a computer report to extract data.
 "(d) Nothing in this chapter shall be construed to permit an agency to delay or obstruct the inspection or copying of public records. The notification of denial of any request for records required by Section 6255 shall set forth the names and titles or positions of each person responsible for the denial.
 "(e) Except as otherwise prohibited by law, a state or local agency may adopt requirements for itself that allow for faster, more efficient, or greater access to records than prescribed by the minimum standards set forth in this chapter."[2]
This statutory disclosure requirement promotes the people's right to monitor their government's activities, in recognition of the principle that "access to information concerning the conduct of the public's business is a fundamental and necessary right of every person in this state." (§ 6250; see Cal. Const., art. I, §3, subd. (b); Times Mirror Co. v. Superior Court (1991)53 Cal.3d 1325, 1338-1339; CBS, Inc. v. Block (1986)42 Cal.3d 646, 651-655; Marylander v. Superior Court (2000)81 Cal.App.4th 1119, 1125; 73 Ops.Cal.Atty.Gen. 236, 237 (1990).)[3]
In 2000, the Legislature enacted section 6253.9 to address the increasingly widespread use of government documents that are produced in an electronic format. (Stats. 2000, ch. 982, § 2.) Section 6253.9 provides:
 "(a) Unless otherwise prohibited by law, any agency that has information that constitutes an identifiable public record not exempt from disclosure pursuant to this chapter that is in an electronic format shall make that information available in an electronic format when requested by any person and, when applicable, shall comply with the following:
 "(1) The agency shall make the information available in any electronic format in which it holds the information.
 "(2) Each agency shall provide a copy of an electronic record in the format requested if the requested format is one that has been used by the agency to create copies for its own use or for provision to other agencies. The cost of duplication shall be limited to the direct cost of producing a copy of a record in an electronic format.
 "(b) Notwithstanding paragraph (2) of subdivision (a), the requester shall bear the cost of producing a copy of the record, including the cost to construct a record, and the cost of programming and computer services necessary to produce a copy of the record when either of the following applies:
 "(1) In order to comply with the provisions of subdivision (a), the public agency would be required to produce a copy of an electronic record and the record is one that is produced only at otherwise regularly scheduled intervals.
 "(2) The request would require data compilation, extraction, or programming to produce the record.
 "(c) Nothing in this section shall be construed to require the public agency to reconstruct a record in an electronic format if the agency no longer has the record available in an electronic format.
 "(d) If the request is for information in other than electronic format, and the information also is in electronic format, the agency may inform the requester that the information is available in electronic format.
 "(e) Nothing in this section shall be construed to permit an agency to make information available only in an electronic format.
 "(f) Nothing in this section shall be construed to require the public agency to release an electronic record in the electronic form in which it is held by the agency if its release would jeopardize or compromise the security or integrity of the original record or of any proprietary software in which it is maintained.
 "(g) Nothing in this section shall be construed to permit public access to records held by any agency to which access is otherwise restricted by statute."
Consistent with the terms of section 6253.9 is the broad language of section 6252, subdivision (g), which defines a "writing" as follows:
 "`Writing' means any handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing any form of communication or representation,
including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored." (Italics added.)
It is apparent from the provisions of sections 6252 and 6253.9 that parcel boundary map data maintained by a county assessor in an electronic format is subject to inspection and copying by members of the public unless some exemption applies allowing nondisclosure. The Act contains numerous exemptions under which specified records may be kept confidential. (See, e.g., §§ 6254.1, 6254.3, 6254.4, 6254.20, 6254.22, 6254.25.) Such statutory exceptions, however, are to be narrowly construed. (See Cal. Const., art. I, § 3, subd. (b)(2); City of Hemet v.Superior Court (1995) 37 Cal.App.4th 1411, 1425; Rogers v.Superior Court (1993) 19 Cal.App.4th 469, 476; 79 Ops.Cal.Atty.Gen. 269, 271 (1996).)[4]
Here, we find that two of the Act's exemptions merit our analysis. First, section 6254.9 provides a specific exemption for "computer software," including "computer mapping systems":
 "(a) Computer software developed by a state or local agency is not itself a public record under this chapter. The agency may sell, lease, or license the software for commercial or noncommercial use.
 "(b) As used in this section, `computer software' includes computer mapping systems, computer programs, and computer graphics systems.
 "(c) This section shall not be construed to create an implied warranty on the part of the State of California or any local agency for errors, omissions, or other defects in any computer software as provided pursuant to this section.
 "(d) Nothing in this section is intended to affect the public record status of information merely because it is stored in a computer. Public records stored in a computer shall be disclosed as required by this chapter.
 "(e) Nothing in this section is intended to limit any copyright protections."
Does parcel boundary map data maintained in an electronic format by a county assessor constitute a "computer mapping system" for purposes of section 6254.9?
To understand the language of section 6254.9, we apply well recognized rules of statutory interpretation. "`In construing a statute, "`we strive to ascertain and effectuate the Legislature's intent.' [Citations.]"'" (In re Dannenberg
(2005) 34 Cal.4th 1061, 1081.) "The words of the statute are the starting point." (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973,977.) "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.]" (Lungren v. Deukmejian
(1988) 45 Cal.3d 727, 735; accord, Curle v. Superior Court
(2001) 24 Cal.4th 1057, 1063.) As so construed, they provide the best indication of the Legislature's intent. (People v. Smith
(2004) 32 Cal.4th 792, 777-798; People v. Castenada (2000)23 Cal.4th 743, 746-747.) And, as indicated above, since section 6254.9 is an exemption statute, it is to be strictly construed in favor of disclosure. (City of Hemet v. Superior Court, supra,
37 Cal.App.4th at p. 1425.)
Following these governing principles of statutory construction, we find that the term "computer mapping systems" in section 6254.9 does not refer to or include basic maps and boundary information per se (i.e., the basic data compiled, updated, and maintained by county assessors), but rather denotes unique computer programs to process such data using mapping functions — original programs that have been designed and produced by a public agency. (See, e.g., §§ 6254.9, subd. (d), 6253.9, subd. (f) [distinguishing "record" from "software in which [record] is maintained"], 51010.5, subd. (i) [defining "GIS mapping system" as system "that will collect, store, retrieve, analyze, and display environmental geographic data . . ." (italics added)]; see also Cadence Design Systems, Inc. v. Avant! Corporation
(2002) 29 Cal.4th 215 [action between two "software developers" who design "place and route software"]; Edelstein v. City andCounty of San Francisco (2002) 29 Cal.4th 164, 171 [delay in implementation of elections system because necessary "software" not yet "developed" and tested]; Computer Dict. (3d ed. 1997) p. 441 [defining "software" as "[c]omputer programs; instructions that make hardware work"]; Freedman, The Computer Glossary: The Complete Illustrated Dict. (8th ed. 1998) p. 388 ["A common misconception is that software is also data. It is not. Software tells the hardware how to process the data. Software is `run.' Data is `processed'"].) Accordingly, parcel map data maintained in an electronic format by a county assessor does not qualify as a "computer mapping system" under the exemption provisions of section 6254.9.
The other exemption we must consider is subdivision (k) of section 6254, which provides:
 "Except as provided in Sections 6254.7 and 6254.13, nothing in this chapter shall be construed to require disclosure of records that are any of the following:
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(k) Records, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege."[5]
As we observed in 76 Ops.Cal.Atty.Gen. 219, 221 (1993), subdivision (k) "does not constitute an independent exemption; rather, it merely incorporates other prohibitions established by law." (See also CBS, Inc. v. Block, supra, 42 Cal.3d at p. 656;San Gabriel Tribune v. Superior Court (1983)143 Cal.App.3d 762, 775.) Subdivision (k)'s incorporation includes any specific procedures, standards, or burdens governing disclosure in the "other statute," no matter how arduous those requirements may be. (City of Hemet v. Superior Court, supra, 37 Cal.App.4th at pp. 1422-1431.)
Here, we find that subdivision (k) of section 6254 incorporates the special restrictive definitions of "public documents" set forth in the Revenue and Taxation Code with respect to information and records prepared and maintained by county assessors. Revenue and Taxation Code sections 408, subdivision (a), provides:
 "Except as otherwise provided in subdivision (b), (c), (d), and (e), any information and records in the assessor's office that are not required by law to be kept or prepared by the assessor, and homeowners' exemption claims, are not public documents and shall not be open to public inspection. . . ."[6]
Revenue and Taxation Code section 408.3 states:
 "(a) Except as otherwise provided in Sections 451 and 481 and in Section 6254 of the Government Code, property characteristics information maintained by the assessor is a public record and shall be open to public inspection.
 "(b) For purposes of this section, `property characteristics,' includes, but is not limited to, the year of construction of improvements to the property, their square footage, the number of bedrooms and bathrooms of all dwellings, the property's acreage, and other attributes of or amenities to the property, such as swimming pools, views, zoning classifications or restrictions, use code designations, and the number of dwelling units of multiple family properties.
 "(c) Notwithstanding Section 6257 of the Government Code or any other provision of law, if the assessor provides property characteristics information at the request of any party, the assessor may require that a fee reasonably related to the actual cost of developing and providing the information be paid by the party receiving the information.
 "The actual cost of providing the information is not limited to duplication or production costs, but may include recovery of developmental and indirect costs, as overhead, personnel, supply, material, office, storage, and computer costs. All revenue collected by the assessor for providing information under this section shall be used solely to support, maintain, improve, and provide for the creation, retention, automation, and retrieval of assessor information.
 "(d) The Legislature finds and declares that information concerning property characteristics is maintained solely for assessment purposes and is not continuously updated by the assessor. Therefore, neither the county nor the assessor shall incur any liability for errors, omissions, or approximations with respect to property characteristics information provided by the assessor to any party pursuant to this section. Further, this subdivision shall not be construed to imply liability on the part of the county or the assessor for errors, omissions, or other defects in any other information or records provided by the assessor pursuant to the provisions of this part."[7]
Revenue and Taxation Code section 409, subdivision (a), additionally provides:
 "Notwithstanding Section 6257 of the Government Code or any other statutory provision, if the assessor, pursuant to the request of any party, provides information or records that the assessor is not required by law to prepare or keep, the county may require that a fee reasonably related to the actual cost of developing and providing that information be paid by the party receiving the information. The actual cost of providing the information is not limited to duplication or reproduction costs, but may include recovery of developmental and indirect costs, such as overhead, personnel, supply, material, office, storage, and computer costs. It is the intent of this section that the county may impose this fee for information and records maintained for county use, as well as for information and records not maintained for county use. Nothing herein shall be construed to require an assessor to provide information to any party beyond that which he or she is otherwise statutorily required to provide."
To the extent that these Revenue and Taxation Code provisions exempt or otherwise prohibit disclosure of certain county assessor records, they are incorporated into the Act pursuant to section 6254, subdivision (k). However, such incorporation does not shield from disclosure parcel boundary map data maintained in an electronic format by a county assessor, because county assessors are "required by law" within the meaning of Revenue and Taxation Code section 408, subdivision (a), to prepare and maintain parcel boundary maps showing assessor's parcels, and must make such maps and data available for public inspection. Revenue and Taxation Code section 327 provides in part:
 "Where any county or county officer possesses a complete, accurate map of any land in the county, or whenever such a complete, accurate map has been made in compliance with Sections 27556 to 27560, inclusive, of the Government Code, the assessor may number or letter the parcels in a manner approved by the board of supervisors. The assessor may renumber or reletter the parcels or prepare new map pages for any portion of such map to show combinations or divisions of parcels in a manner approved by the board of supervisors, so long as an inspection of such map will readily disclose precisely what land is covered by any particular parcel number or letter in the current or any prior fiscal year. This map or copy shall at all times be publicly displayed in the office of the assessor."[8]
A county assessor must provide an assessment roll of "all property within the county which it is the assessor's duty to assess" (Rev. Tax. Code, § 601), showing a "legal description" of the land (Rev. Tax. Code, §§ 602, subd. (b), 1255).
Because county assessors are required by law to prepare and keep parcel maps and corresponding boundary information, indexed to parcel identification numbers, such records do not come within the exemption language of Revenue and Taxation Code section 408, subdivision (a).
To be sure, no provision of law dictates that a county assessor must keep this required parcel boundary map data in anelectronic format; rather, the choice to do so lies within the discretion of each assessor. But once such a format has been selected, the material must be made available for public inspection, and copies of the data, in the electronic format in which it is held, must be provided upon request. Section 6253.9 asks only whether a public agency has information constituting a public record "in an electronic format" — not whether a statute dictates the use of such a format.
Finally, we assume that release of the parcel boundary map data maintained in an electronic format will not "jeopardize or compromise the security or integrity of the original record or of any proprietary software in which it is maintained" (§ 6253.9, subd. (f)), and that the public interest served by disclosure would not be "clearly outweighed" by any public interest in nondisclosure (§ 6255). Application of either of these two statutes would depend upon the particular and unique circumstances involved. No other statutory exemptions appear relevant to our inquiry.[9]
We conclude in answer to the first question that parcel boundary map data maintained by a county assessor in an electronic format is subject to public inspection and copying under provisions of the Act.
2. Time for Responding to Disclosure Request
With respect to the date by which a county must respond to a request for parcel boundary map data maintained in an electronic format, the provisions of section 6253 govern, as quoted above. Since the data is not exempt from disclosure, a county is required to "make the records promptly available to any person upon payment of fees covering direct costs of duplication, or a statutory fee if applicable." (§ 6253, subd. (b).)
We conclude that parcel boundary map data maintained in an electronic format by a county assessor must be furnished "promptly" upon request of a member of the public.
3. Fees That May Be Charged
The amount of the fees that may be charged by a county for furnishing parcel boundary map data maintained in an electronic format depends upon the particular circumstances specified in section 6253.9. First, the county must "make the information available in any electronic format in which it holds the information." (§ 6253.9 subd. (a)(1).) If a county no longer has the information in an electronic format, it need not attempt to reconstruct the data. (§ 6253.9, subd. (c).)
If the request is for a copy in an electronic format that the county has used to create copies for its own use or for providing copies to other public agencies, the fee that may be charged is "limited to the direct cost of producing a copy of [the] record in [the] electronic format." (§ 6253.8, subd. (a)(2); see NorthCounty Parents Organization v. Department of Education (1994)23 Cal.App.4th 144, 148 ["`Direct cost' does not include the ancillary tasks necessarily associated with the retrieval, inspection and handling of the file from which the copy is extracted"]; 85 Ops.Cal.Atty.Gen. 225, 227-229 (2002).)
If the request is made at a time other than when the data is periodically produced, the fee may additionally include "the cost to construct [the] record, and the cost of programming and computer services necessary to produce a copy of the record." (§ 6253.9, subd. (b)(1).) The fee may similarly cover such additional costs when "[t]he request would require data compilation, extraction, or programming to produce the record." (§ 6253.9, subd. (b)(2).) In either event, however, the fee may not include expenses associated with the county's initial gathering of the information, or with initial conversion of the information into an electronic format, or with maintaining the information.
We conclude that the fee that may be charged by a county for furnishing a copy of parcel boundary map data maintained in an electronic format by a county assessor is generally limited to the amount that covers the direct cost of producing the copy but may include certain other costs depending upon the particular circumstances as specified in the Act.
[1] All references hereafter to the Government Code are by section number only.
[2] Section 6255 states:
 "(a) The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."
 "(b) A response to a written request for inspection or copies of public records that includes a determination that the request is denied, in whole or in part, shall be in writing."
[3] Our focus here is the scope of the public's right to inspect and copy records maintained by a county assessor. We do not address the separate question concerning the circumstances under which such information must be made available to other government entities. (See, e.g., Rev. Tax. Code, § 408, subd. (b); State Bd. of Equalization v. Watson (1968) 68 Cal.2d 307,312 [State Board of Equalization]; 68 Ops.Cal.Atty.Gen. 209, 219-223 (1985) [Internal Revenue Service]; cf. 52 Ops.Cal.Atty.Gen. 194, 195-196 (1969) [state inheritance tax appraisers]; see also § 6254.5, subd. (e) [confidential disclosure of exempt material to governmental agency in performance of official duties does not constitute waiver of exemption].)
[4] In addition to its specific exemptions, the Act permits a public agency to withhold a requested public record when "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 6255, subd. (a); see, e.g., 84 Ops.Cal.Atty.Gen. 55, 56-60 (2001); 81 Ops.Cal.Atty.Gen. 383, 386-388 (1998).)
[5] Section 6254.7 provides that certain records relating to public health are public records. Section 6254.13 refers to test questions and other materials used by the Department of Education. We note that subdivision (k) of section 6254 is consistent with subdivision (g) of section 6253.9, quoted above, which exempts electronic records "to which access is otherwise restricted by statute."
[6] Subdivision (b) of the statute authorizes an assessor to provide appraisal data to any other county assessor, and requires disclosure to specified public officials and agencies. Subdivision (c) concerns the disclosure of information to the county tax collector, and subdivisions (d) and (e) involve disclosure to a property owner whose property is being assessed.
[7] Revenue and Taxation Code section 451 concerns the contents of property statements required to be filed by specified persons. Revenue and Taxation Code section 481 involves information furnished with respect to a change in property ownership. As noted above, section 6254 provides exemptions from public disclosure. Section 6257 was repealed in 1998 and replaced by section 6253, quoted above. (Stats. 1998, ch. 620, §§ 5, 10.)
[8] Sections 27556-27560 refer to maps filed for record in the office of the county recorder, the duties of the county surveyor, and the preparation of an assessor's maps.
[9] We note that the Act "does not allow limitations on access to a public record based upon the purpose for which the record is being requested, if the record is otherwise subject to disclosure." (§ 6257.5; see Fairley v. Superior Court (1998)66 Cal.App.4th 1414, 1417-1418; Wilder v. Superior Court (1998)66 Cal.App.4th 77, 70.) Also, the fact that a record is costly to produce in the first instance or that a copy thereof may be costly to reproduce for a member of the public does not cause a public record to become exempt from disclosure.